STATE

v.

**Eugene EDWARDS.**

**No. 83–450–C.A.**

Supreme Court of Rhode Island.

July 19, 1984.

Dennis J. Roberts II, Atty. Gen., F. Thomas O'Halloran III, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, Chief of Appellate Division, Janice M. Weisfeld, Asst. Public Defender, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal from a judgment of conviction entered after a jury trial in the Superior Court. The jury returned guilty verdicts on two counts under indictment No. W2/82–147: one count of robbery in violation of G.L.1956 (1981 Reenactment) § 11–39–1, and one count of malicious damage to property in violation of § 11–44–1. As to counts 2 and 3, assaulting a police officer in violation of § 11–5–5, the defendant was acquitted. On appeal the defendant assigns as error certain evidentiary and other rulings.

The record discloses the following facts. The prosecution's key witness, Joseph Dolce, a gas station attendant, testified that on January 4, 1982, at approximately 6:30 p.m. defendant walked into the Hope Valley Sunoco Station, and went up to him and stated "[Y]ou['ve] just been robbed." The defendant then grabbed the handle of the cash register while Dolce attempted to stop him from gaining access to the cash drawer. After shoving him out of the way, defendant proceeded to open the cash register. Meanwhile, Dolce, who had been on the telephone with a female friend when defendant entered the station, told her to call the police. The defendant then kicked the telephone and swung at him. Dolce then ran out of the station and went to a local residence where he told a neighbor to call the police.

When the police responded, he informed them that he had been robbed by Eugene Edwards, whom he recognized from his previous encounters with him. Two officers arrested defendant soon thereafter at defendant's home, located only a short distance from the gas station. He was arrested after engaging in a struggle with the officers. The defendant allegedly assaulted the officers, causing them injury. During this confrontation, in which defendant was rendered unconscious, defendant dropped an envelope containing credit card receipts.

When they searched defendant police found $172 on his person. The owner of the Hope Valley Sunoco Station reported that $171.10 was missing from the cash register. While in police custody, defendant attempted to jump through a storm door, knocking out the plexiglass and screen.

At trial, the defendant took the stand and testified on his own behalf. He stated that on the morning of June 4, 1982, he commenced drinking at approximately 8:30 and continued drinking throughout the entire day, consuming about twenty beers, over three pints of brandy and six or more white russians. He had no memory of the incidents related by the prosecutor's witnesses.

Curnel Place, who testified on behalf of defendant, related that defendant had spent the entire day with him and that he was extremely intoxicated, slurred in his speech, staggering and falling down. Another witness for defendant, Stephen Wilkinson, testified that he ran into defendant at approximately six o'clock that evening and that defendant was intoxicated. The defendant's father also testified concerning the beating of defendant by police.

The issues on appeal are (1) whether the trial justice denied defendant's right to confrontation guaranteed by the Sixth Amendment and the due-process clause of the Fourteenth Amendment of the United States Constitution and article I, section 10, of the Rhode Island Constitution by precluding defendant from inquiring into prosecution witness Dolce's participation in the Attorney General's Diversion Program in order to show bias on the part of the witness; (2) whether the trial justice committed reversible error in denying defendant's motion to pass the case when a state's witness in response to a question by defendant inferred that on prior occasions defendant had resisted arrest; and (3) whether the trial justice's failure to give the jury an instruction on assault as a lesser-included offense to robbery constituted reversible error requiring a new trial.

I

Approximately nine months after the alleged robbery, Dolce admitted to embezzling nearly $1,000 from his employer while working at the Hope Valley Sunoco Station. He was placed in the Attorney General's Diversion Program as an alternative to being criminally prosecuted.

The defendant alleges that the limitation placed on cross-examination by the trial justice violated his constitutional right to confrontation. On cross-examination, defendant attempted to show that the witness was biased and had a motive to tailor his testimony in favor of the state. However, the trial justice did not allow defendant to make inquiry as to the witness's diversionary status because he was placed in that status after the gas-station robbery.

■ It is clear that the scope of cross-examination is a matter that lies within the sound discretion of the trial justice. *State v. Cianci,* R.I., 430 A.2d 756, 762–63 (1981); *State v. Benevides,* R.I., 420 A.2d 65, 69 (1980). However, "[the] discretionary authority to limit cross-examination comes into play [only] after there has been permitted as a matter of right sufficient cross-examination to satisfy [the defendant's confrontation guarantees under] the Sixth Amendment." *State v. Freeman,* R.I., 473 A.2d 1149, 1153–54 (1984) (quoting *United States v. Bass,* 490 F.2d 846, 857–58 n. 12 (5th Cir.1974)). The right to cross-examination is the primary right secured by the confrontation clause. *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974); *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965). It is the principal means for testing the credibility of a witness and the truthfulness of his testimony. *State v. Freeman,* 473 A.2d at 1153; *State v. DeBarros,* R.I., 441 A.2d 549, 552 (1982); *State v. Anthony,* R.I., 422 A.2d 921, 923–24 (1980).

■ However, while we recognize that *Davis* holds that the partiality of a witness

may be explored at trial, and is always relevant for the purposes of discrediting a witness and thereby affecting the weight of his testimony, *Davis* does not permit a defendant to introduce evidence which is irrelevant to showing a witness's purported bias. *See Commonwealth v. Haywood,* 377 Mass. 755, 761, 388 N.E.2d 648, 652 (1979). We believe that the trial justice is never stripped of his function of determining whether evidence is material to the purpose for which it is being introduced.

■ An examination of the record discloses that Dolce was referred to the diversion program on January 14, 1983, and began the program on March 28, 1983. Therefore, Dolce had already been referred to the diversion program at the start of defendant's trial. By the terms of his diversion contract, and in light of his status at the start of trial, we fail to see how Dolce may have had a motive to be biased in his testimony. Unlike in *State v. DeBarros,* 441 A.2d at 552, where the witness potentially had a financial interest in the outcome of the case, the witness in the case before us, Dolce, had no interest in the disposition of defendant's case.

A comparison of Dolce's testimony at trial with the statement given to police shortly after the alleged robbery shows that they were virtually identical in depicting the specific events as they occurred on January 4, 1982. By defense counsel's own admission at trial, Dolce's statements to police together with his statements to the grand jury were substantially the same as his testimony at trial. Moreover, as to any perceived inconsistencies between Dolce's statements to police and his testimony at trial, defense counsel had ample opportunity to bring them out on cross-examination.

Accordingly, we must conclude that the line of questioning that defendant attempted to pursue in his cross-examination of Dolce, was not protected by defendant's Sixth Amendment confrontation rights nor was it protected by art. I, sec. 10, of the Rhode Island Constitution. The trial jus-

tice did not abuse his discretion in limiting defendant's cross-examination.

## II

■ Next, we must consider whether the trial justice should have passed the case when an allegedly prejudicial remark was made at trial. In the course of cross-examination by defendant, the following colloquy took place between defense counsel and Officer W. Patrick McQueeney when the officer was questioned about the way defendant was acting when he was arrested.

"Q. Was there anything unusual about the way he [defendant] was acting?

"The Court. When?

"Mr. O'Keefe. Excuse me, your honor.

"Q. From the time you first met up with him in his yard, Trooper.

"A. He put up a stronger resistance that I had known him to put up before."

The defendant argues that allowing the witness for the prosecution to testify to prior bad acts committed by defendant prejudiced the accused in the minds of the jury, predisposing them to adjudge the accused guilty. The defendant further contends that no cautionary instruction would cure this prejudice.

We have held on prior occasions that when counsel goes fishing on cross-examination, he cannot assume that in playing with fire, he will not get burned. *State v. Clark,* R.I., 423 A.2d 1151, 1159 (1980); *State v. Mastracchio,* 112 R.I. 487, 495, 312 A.2d 190, 195 (1973). While it is not clear what defense counsel hoped to achieve it is fair to assume that the question asked Officer McQueeney to make a comparison of defendant's conduct on the night of his arrest with his conduct on other occasions. Defense counsel may not have intended Officer McQueeney to make such a comparison. However, the question is so broadly worded that the officer's remark was responsive to the questions asked.

■ Furthermore, assuming that prejudice resulted from the remark, pursuant

to our holding in *State v. Pugliese*, 117 R.I. 21, 25, 362 A.2d 124, 126 (1976), defendant should have made a request for a cautionary instruction. On appeal, we will review a trial justice's ruling on a motion to pass only where a request for a cautionary instruction has been made at trial, unless such a request would be an idle gesture. *Id.; State v. Sawyers*, 116 R.I. 230, 233, 354 A.2d 115, 116 (1976). We believe that in the present case, a request for such an instruction would not have been an idle gesture. Therefore, we are of the opinion that the trial justice's denial of defendant's motion to pass the case was not erroneous. Accordingly, it was not an abuse of discretion.

### III

Finally, we will consider whether the trial justice erred in refusing defendant's request that he instruct the jury on assault, as a lesser-included offense of robbery. As a defense, defendant claimed that his state of intoxication prevented him from forming the necessary specific intent needed to commit the crime of robbery.

The specific intention to deprive another wholly and permanently of his property is an essential element of the crime of robbery. *State v. Robalewski*, R.I., 418 A.2d 817, 821 (1980); *State v. McGehearty*, 121 R.I. 55, 59, 394 A.2d 1348, 1351 (1978). We have also stated that assault and larceny are essential elements of the crime of robbery. *Brady v. Langlois*, 104 R.I. 301, 305, 243 A.2d 906, 908 (1968). Because there was evidence of intoxication[1] which, if sufficient, might have negated the specific intent needed to prove a prima facie case of robbery, the trial justice should have given an instruction on the lesser-included offense of simple assault.

We find, however, that the failure to give such an instruction was harmless error. We believe that the evidence

---

**1.** The trial justice instructed the jury that it was the state's burden to prove beyond a reasonable doubt that defendant was not intoxicated to the

brought out at trial was sufficient to warrant a finding that defendant was not intoxicated to such a degree that he could not entertain the specific intent to steal needed to commit robbery when he walked into the Hope Valley Sunoco Station on January 4, 1982. The attendant at the station, Dolce, testified that he noticed nothing unusual about defendant's walk or his speech. Dolce testified only that there was an odor of alcohol on defendant's breath. Moreover, defendant testified that he had no recollection of any of the events surrounding the robbery, yet he testified with specificity to everything that he drank that day. Additionally, at the time of his arrest, defendant instantly recognized one of the arresting officers as Officer W. Patrick McQueeney and remarked to him, "Pat, I didn't do anything."

We believe that all of this evidence together with other evidence overwhelmingly supports the conclusion that the defendant was not so intoxicated that he was incapable of entertaining the intent to steal.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

---

degree that would negate the necessary specific intent to commit a robbery.