STATE

v.

Michael BURKE.

No. 86–14–C.A.

Supreme Court of Rhode Island.

March 17, 1987.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Sp. Asst. Atty. Gen., for plaintiff.

Gregory A. Madoian, Charles Butterfield, Jr., Warwick, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal by the defendant, Michael Burke, from judgments of conviction entered after a jury trial in the Superior Court. We affirm. The jury returned guilty verdicts on two counts of first-degree sexual assault in violation of G.L.1956 (1981 Reenactment) § 11-37-2, as amended by P.L.1981, ch. 119, § 1. Valerie T.,[1] the complaining witness, testified to the following facts at trial.

On or about October 14, 1983, Valerie was hitchhiking along Post Road in North Kingstown, when defendant, a uniformed police officer, pulled up in his police cruiser and asked her to come over to him. When she approached the car, defendant asked her if she wanted to make some money. She replied that she did not, whereupon he asked her to enter the cruiser. The complaining witness testified that she complied with this request because she "didn't know what else to do" and because she was afraid.

Valerie told the jury that Sergeant Burke drove her to his house and told her to follow him to the den. He then told her to remove her clothes. She refused. He asked her to give him a "blow job," and she replied that she would not. At that point he pulled down his pants and told her to kneel on the floor. She complied because she was afraid of defendant due to the fact that he was a uniformed police officer carrying a gun. He then started pushing on her head so that her mouth was pen-

etrated by his penis. When she got up, Officer Burke put a handcuff on Valerie's left arm, laughed at her, removed the handcuff, and made her lie on the rug. He knelt on top of her and masturbated, ejaculating on her face. Following this episode, defendant drove Valerie home, instructing her not to tell anyone what had happened.

Valerie also testified that on another occasion, in early January of 1984, Sergeant Burke again approached her and asked her if she wanted a ride. After she refused, he got out of his police cruiser and pulled her by the arm into the front seat. The defendant threatened not to let Valerie out of the car unless she performed oral sex on him. He undid his pants and, while driving, pushed her head down, penetrating her mouth with his penis.

Count 1 of the indictment refers to the October 1983 incident and count 2, the occurrence in January 1984. The defendant raises a number of issues on appeal. We shall discuss these issues in the order presented by the defense.

### I

The defendant first asserts that the trial justice abused his discretion in precluding him from introducing certain evidence. Valerie testified on cross-examination that defendant wore a black pistol and that defendant's home was the first house on the right-hand side of Lynn Drive. The defendant thereupon attempted to supplement his answer to the state's request for discovery by notifying the prosecution that Patrolman Michael Sullivan would testify that defendant's house was the third house on the right side of Lynn Drive and that Patrolman Jeffrey Boisvert would testify that defendant was issued a silver-colored gun during all times relevant to the incidents alleged at trial.

The prosecution informed the trial justice that both patrolmen, Sullivan and Boisvert, had been present in court during the trial and that the admission of their testimony would constitute a violation of the trial justice's prior sequestration order. As a

---

1. This is a fictional name adopted to protect the victim's identity.

sanction for violation of the sequestration order and of Rule 16 of the Superior Court Rules of Criminal Procedure, the trial justice excluded the proffered testimony of Officers Sullivan and Boisvert. Four days after the trial justice's decision, defendant once again sought to supplement his answer to the state's discovery request to offer the testimony of Patrolman John D'Ellena. The defendant's supplemental memorandum stated that D'Ellena would testify about the location of defendant's house and the color of defendant's gun during the period in question. Citing his discretionary authority under Rule 16(i), the trial justice refused to admit the proffered testimony.

## A

■ The defendant contends that the exclusion of proffered defense testimony is generally an improper sanction for violation of a sequestration order. We agree. Under the overwhelming weight of authority, it is an abuse of discretion to preclude a criminal defense witness's testimony for violation of a sequestration order unless special circumstances exist that would warrant the preclusion. *See, e.g., Holder v. United States,* 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893); *United States v. Torbert,* 496 F.2d 154 (9th Cir.), *cert. denied,* 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed.2d 91 (1974); *Braswell v. Wainwright,* 463 F.2d 1148 (5th Cir.1972); *United States v. Schaefer,* 299 F.2d 625 (7th Cir.), *cert. denied,* 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497 (1962). *See generally* Annot. 14 A.L. R.3d 16, § 6(c) at 54–56 (1967 & 1986 Supp.). Unless violation of the sequestration order is due to the consent, connivance, procurement or knowledge of the defendant or his counsel, a trial justice should not deprive a criminal defendant of his right to present testimony. *State v. Warren,* 437 So.2d 836 (La.1983); *State v. Burdge,* 295 Or. 1, 664 P.2d 1076 (1983); *Commonwealth v. Scott,* 496 Pa. 78, 436 A.2d 161 (1981). Instead, a trial justice should consider alternative sanctions to enforce the order, such as the issuance of a cautionary instruction to the jury or in some instances a contempt proceeding

against the witness. *See Holder v. United States,* 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893); *State v. Leong,* 51 Haw. 581, 465 P.2d 560 (1970); *Commonwealth v. Scott,* 496 Pa. 78, 436 A.2d 161 (1981).

■ In the case at bar it seems clear beyond doubt that defendant had no intention of calling these police officers as witnesses until after he had heard the testimony of the complaining witness. He then proposed to call these officers purely for the purpose of impeaching the credibility of the complaining witness in respect to certain details set forth in her cross-examination. The testimony of these rebuttal witnesses was neither foreseen nor reasonably foreseeable at the time the sequestration order was issued by the judge. Therefore, it is highly questionable that the officers or defendant violated the sequestration order at all, but if a retroactive violation could be discerned, it would obviously be wholly unintentional. The preclusion of testimony based solely on an unintentional violation of the order was unwarranted.

## B

We must now determine whether the trial justice was justified in excluding the proffered testimony as a sanction for an alleged violation of defendant's discovery obligations under Rule 16. In this case, defendant's nondisclosure was due to the fact that he was surprised by the testimony of the complaining witness on cross-examination and hence could not have foreseen the need to contradict that testimony. We have stated that nondisclosure is not deliberate when the necessity of calling the witness is not known until the last minute. *State v. Ricci,* 472 A.2d 291 (R.I.1984); *State v. Sciarra,* 448 A.2d 1215 (R.I.1982). In *Sciarra* we held that imposition against a defendant of the severe sanction of exclusion constituted an abuse of discretion when the defendant's proffered evidence was based on facts that were unknown until trial and, once in possession of the information, the defendant exercised due diligence in providing the state with a summary of the proposed testimony. 448 A.2d at 1219. This court has also stated that no

error results from the admission of a rebuttal witness's testimony despite the absence of prior disclosure by the prosecution when the state had no way of knowing it would call a rebuttal witness. *State v. Lawrence*, 492 A.2d 147 (R.I.1985); *State v. Ricci*, 472 A.2d 291 (R.I.1984).

█ The state suggests that by cross-examining the complaining witness, defense counsel was attempting to lay a foundation for an attack upon her memory in respect to the gun and, presumably, the location of the house. This may be true but is scarcely determinative. It is obvious that defense counsel did attempt to probe the complaining witness's memory on numerous subjects. He could not have known which subjects might be vulnerable to impeachment until after he had heard the answers. Since the defense did not know with any degree of certainty, prior to its cross-examination of the complaining witness, specifically what impeachment testimony would be offered, no violation of Rule 16 occurred in the instant case. Consequently, the exclusion of this evidence was erroneous.

█ The improper exclusion of evidence, however, is reversible error only if the excluded evidence would have had a controlling influence on a material aspect of the case. *State v. Calitri*, 459 A.2d 478 (R.I.1983); *State v. Tavarozzi*, 446 A.2d 1048 (R.I.1982). We shall not mandate a new trial unless the preclusion of testimony causes substantial injury to the party seeking its admission. *State v. Parker*, 472 A.2d 1206 (R.I.1984). In determining whether the rejection of proffered testimony is prejudicial, this court must ascertain whether the rejected evidence reasonably could have altered the result. *State v. Almeida*, 111 R.I. 566, 304 A.2d 895 (1973).

█ The defendant contends that the excluded evidence bears significantly on the victim's credibility and on her identification of defendant. We disagree. The record reveals that Valerie identified defendant by his name, rank, and age, as well as by the hours he was on duty. She identified him in court. Additionally, Valerie led Lieutenant Wynne to Sergeant Burke's home on 37 Lynn Drive and identified it as the house to which she had been transported by defendant. She described the house as a one-level ranch that she entered through a door inside the garage on the left-hand side and further described with some specificity the interior of the house.

In light of the abundance of evidence identifying defendant as Valerie's assailant, it cannot reasonably be found that the exclusion of evidence contradicting two minor points of Valerie's testimony caused substantial damage to defendant or could have altered the result. Moreover, although defendant asserts that the proffered testimony clearly contradicts Valerie on these points, a review of the record indicates that in her own testimony she seemed unsure of those details.[2] Because of Valerie's apparent uncertainty about the gun's color and the position of the house on the street, contradiction of her testimony on those points could have had only a minimal, if any, effect on the jury. Certainly

2. "Q. Would you describe the gun?
"A. No.
"Q. You couldn't describe the gun?
"A. Just a gun.
 * * * * * *
"Q. What color was the gun?
"A. Black, I guess.
"Q. Well, you remember seeing the gun, didn't—it was a black gun, isn't that true?
"A. Yes, like all police officers wear.
 * * * * * *
"Q. And did you have occasion to notice whether or not the street that you went on with Lieutenant Wynne was a dead end street or not a dead end street?
"A. No, because the first house on the right hand side—

 * * * * * *
"Q. Now, did you just—did you just say that the house was the first house on the right hand side after your made that turn? Did you just tell the jury that?
"A. Yes, I am pretty sure it was, I didn't count the houses.
"Q. But your memory is that it's the first house after you took the right, isn't that true?
"A. Could be the first or so—could be the second now you never know, but it was one of those houses first on the right.
"Q. First one on the right is the best of your memory, isn't that true?
"A. Yes."

the excluded evidence would not have had "a controlling influence on a material aspect of the case." Therefore, we conclude that the trial justice's exclusion of this evidence does not warrant reversal.

### C

■ For the first time on appeal, defendant argues that his constitutional right to confrontation was violated by the trial justice's preclusion of his witness's testimony. Generally, this court will not consider questions that are not properly presented in the court below. *State v. Reis,* 430 A.2d 749 (R.I.1981). The defendant, however, argues that this court should entertain the confrontation issue pursuant to the rule enunciated in *State v. McGehearty,* 121 R.I. 55, 394 A.2d 1348 (1978).

■ In *McGehearty* we held that we would review questions concerning basic constitutional rights despite counsel's failure to raise the issue at trial when the error is not harmless and counsel's failure to raise the issue does not constitute a "deliberate bypass" or "sandbagging." *Id.* at 62, 394 A.2d at 1352. In so doing, this court sought to tie its review closely to the availability of habeas corpus relief in the interest of judicial economy. *See id.* at 61 n. 6, 394 A.2d at 1352 n. 6. Although in *McGehearty* we rejected the "cause-and-prejudice" test for federal habeas review set forth in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), in favor of the "deliberate bypass" test articulated in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), we now find it necessary to reject "the sweeping language of *Fay v. Noia,* going far beyond the facts of the case eliciting it * * *." *Wainwright,* 433 U.S. at 87–88, 97 S.Ct. at 2507, 53 L.Ed.2d at 608. The deliberate-bypass standard has never been satisfactorily defined, and retention of it simply serves to confuse. *See State v. Cortellesso,* 417 A.2d 299 (R.I.1980); *see also State v. Amado,* 433 A.2d 233, 241 (R.I.1981) (Weisberger, J., concurring).

This court's review of questions concerning basic constitutional rights, notwithstanding a defendant's failure to raise the issue at trial, is limited to the following circumstances. First, the error complained of must consist of more than harmless error. Second, the record must be sufficient to permit a determination of the issue. *See McGehearty,* 121 R.I. at 62, 394 A.2d at 1352. Third, counsel's failure to raise the issue at trial must be due to the fact that the issue is based upon a novel rule of law of which counsel could not reasonably have known at the time of trial. *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984); *State v. Amado,* 433 A.2d 233 (R.I. 1981); *State v. Reis,* 430 A.2d 749 (R.I. 1981); *State v. Robalewski,* 418 A.2d 817 (R.I.1980). For example, when an intervening decision of this court or of the Supreme Court of the United States establishes a novel constitutional doctrine, counsel's failure to raise the issue at trial will not preclude our review. *See Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984); *State v. Amado,* 433 A.2d 233 (R.I.1981); *State v. Reis,* 430 A.2d 749 (R.I.1981).

We have consistently held in criminal cases that issues will not be addressed when raised for the first time on appeal. *See, e.g., State v. Fogarty,* 433 A.2d 972 (R.I.1981); *State v. Muir,* 432 A.2d 1173 (R.I.1981); *State v. McParlin,* 422 A.2d 742 (R.I.1980); *State v. Feng,* 421 A.2d 1258 (R.I.1980); *State v. Berberian,* 416 A.2d 127 (R.I.1980); *State v. Giordano,* 413 A.2d 93 (R.I.1980); *State v. Haigh,* 112 R.I. 740, 315 A.2d 431 (1974). To the extent that *McGehearty* appears to depart from this rule more expansively than our foregoing analysis would indicate, it is not controlling.

The importance of the "raise-or-waive" rule is not to be undervalued. Not only does the rule serve judicial economy by encouraging resolution of issues at the trial level, it also promotes fairer and more efficient trial proceedings by providing opposing counsel with an opportunity to respond appropriately to claims raised. *See* 3 LaFave & Israel, *Criminal Procedure* § 26.-5(c) at 251 (1984). As the United States Supreme Court stated in *Wainwright v. Skyes:*

"[T]he trial of a criminal case * * * [is] a decisive and portentious event. A defendant has been accused of a serious crime, and this is the time and place set for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: the accused is in the courtroom, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable * * *." 433 U.S. at 90, 97 S.Ct. at 2508, 53 L.Ed.2d at 610.

■ In this case, defendant has not met our standard for appellate review. The issue he raises is not a novel one but has been raised in several of our decisions. *State v. Sciarra*, 448 A.2d 1215 (R.I.:1982); *State v. Silva*, 118 R.I. 408, 374 A.2d 106 (1977). In fact, in *State v. Engram*, 479 A.2d 716 (R.I.1984), we specifically refused to consider the constitutional implications of sanctions that preclude a defendant from presenting evidence because the defendant failed to present to the trial justice his objection based on the constitutional ground. In light of these cases, it is clear not only that trial counsel should have reasonably been aware of the legal basis for the constitutional claim but also that the issue should have been preserved for appeal.[3]

## II

The defendant asserts that the trial justice impermissibly limited cross-examination of the complaining witness with re-

spect to her alcoholism and its effect on her memory and perception. The defendant claims that the trial justice's refusal to permit cross-examination regarding Valerie's evaluations for treatment of alcoholism on dates subsequent to the alleged incidents of sexual assault constitutes reversible error. We disagree.

■ Cross-examination of a witness with respect to his or her ability to perceive and remember facts is guaranteed to criminal defendants by the state and federal constitutional right of confrontation. *State v. Manocchio*, 496 A.2d 931 (R.I. 1985). The defendant, however, erroneously cites *State v. Ahmadjian*, 438 A.2d 1070 (R.I.1981), for the proposition that the trial court erred in excluding the proffered evidence. In *Ahmadjian* we held that evidence of a witness's intoxication, at the time of the occurrence of the events to which he is testifying, is admissible for impeachment purposes. 438 A.2d at 1088; *see also State v. Wyche*, 518 A.2d 907 (R.I.1986). In this case, defendant asserts as error the exclusion of evidence relevant to Valerie's alcoholism.

■ Generally, chronic alcoholism is not admissible for the purpose of impeaching a witness's credibility. *See McCormick on Evidence*, § 45 at 105 (Cleary 3d ed. 1984). Although some courts have found that cross-examination of a witness on the issue of the latter's habitual intoxication or alcoholism is permissible when relevant to the witness's ability to observe or recall events to which the witness testified, *Commonwealth v. Caine*, 366 Mass. 366, 318 N.E.2d 901 (1974); *State v. Blair*, 634 S.W.2d 627 (Tenn.Crim.Ct.App.1982), in this case no relationship exists between the witness's subsequent evaluations for alcohol treatment and her ability to observe and remember the events to which she testified. Although an accused is guaranteed the right to effective cross-examina-

---

**3.** Even if one assumes that the issue of the right to confrontation by impeachment was properly before us, this doctrine is also subject to the harmless-error rule. *See Delaware v. Van Arsdall,* — U.S. —, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Chapman v. California,* 386 U.S. 18,

87 S.Ct. 824, 17 L.Ed.2d 705 (1967). As we pointed out earlier in this opinion, we believe the exclusion of impeaching testimony concerning these minor details of uncertain observations by the complaining witness would be harmless beyond a reasonable doubt.

tion in all criminal matters, a trial justice must exercise discretion in determining the relevancy of proffered evidence and to protect a witness from questions that "harass, annoy, or humiliate." *State v. Anthony,* 422 A.2d 921, 924 (R.I.1980). Because there is a lack of scientific agreement to the effect that addiction affects a witness's credibility, *McCormick On Evidence,* § 45 at 106, and because the defense did not make a showing that evidence of Valerie's evaluations and treatment for alcoholism in the spring and summer of 1984 is in any way relevant to her ability to recall and perceive the incidents of sexual assault that occurred in October of 1983 and January of 1984, we find that the trial justice's exclusion of this evidence was not an abuse of his discretion.

At trial a substantial amount of evidence demonstrative of the fact that the complaining witness had a drinking problem was presented to the jury. The defendant concedes that his cross-examination of Valerie revealed her multiple hospitalizations for alcohol treatment at the Institute for Mental Health (IMH) "detox" unit during the period October 1983 through January 1984. In fact, defendant presented to the jury the testimony of IMH employee Geraldine Marcello regarding Valerie's diagnosed alcoholism and introduced the entire IMH record on Valerie as a full exhibit. Further, the fact of Valerie's spring and summer 1984 hospitalizations was admitted for the purpose of showing witness bias. Counsel for the defense, in closing, extensively utilized the evidence admitted at trial in support of defendant's argument that Valerie's alcoholism affected her credibility. Since the jury was presented with ample opportunity to consider Valerie's credibility in light of her alcoholism, we conclude that no violation of defendant's confrontation rights resulted from the trial justice's limitation of the cross-examination of the complaining witness.

III

The defendant asserts that the trial justice committed reversible error in restricting the cross-examination of Chief John Leyden on the issue of bias. More specifi-cally, he asserts that the trial justice impermissibly precluded cross-examination of Chief Leyden with respect to the failure of the North Kingstown police department to execute a warrant issued against Valerie despite ample opportunity to do so. We disagree.

A criminal defendant's right to cross-examination is guaranteed by the Sixth Amendment to the United States Constitution and art. I, sec. 10, of the Rhode Island Constitution. *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *State v. Anthony,* 422 A.2d 921 (R.I.1980). The bias of a witness is "always relevant as discrediting the witness and affecting the weight of his testimony." *Davis,* 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353 (quoting 3A Wigmore, *Evidence* § 940 at 775 (Chadbourne rev. 1970)). In this case, however, the trial justice determined that the evidence defendant sought to introduce was not material to the issue of Chief Leyden's purported bias. The question of whether proffered evidence is material to a given issue is within the trial court's discretion. *State v. Edwards,* 478 A.2d 972 (R.I.1984). A trial court's rulings about materiality of evidence are not held to be reversible error unless they constitute a prejudicial abuse of discretion. *Kelaghan v. Roberts,* 433 A.2d 226 (R.I.1981); *McSoley v. McSoley,* 91 R.I. 61, 161 A.2d 216 (1960).

Further, a trial justice has discretionary authority to limit cross-examination once there has been sufficient cross-examination to satisfy the defendant's confrontation rights. *State v. Edwards,* 478 A.2d 972 (R.I.1984); *State v. Freeman,* 473 A.2d 1149 (R.I.1984). In the instant case, a wealth of evidence was presented to the jury on the issue of Chief Leyden's possible bias in favor of Valerie. Chief Leyden testified that he took an interest in Valerie and actively assisted her in seeking treatment for alcoholism. He stated that he contacted the IMH on Valerie's behalf, helped place her in alcohol treatment facilities, and provided her with financial aid for the purpose of receiving such treatment.

Chief Leyden also testified that he had personally rejected recommendations of North Kingstown police department members to file disorderly conduct charges against Valerie. Certainly the issue of this witness's purported bias in favor of Valerie was explored in depth. In light of the fact that ample evidence was presented to the jury on the issue of bias, the excluded testimony regarding the police department's failure to execute the warrant issued against Valerie would have contributed little or nothing to the position of the defense. Since, in this case, the trial court allowed sufficient cross-examination to permit the jury fully to consider the question of the witness's possible bias in favor of the alleged victim, we hold that defendant's right to confrontation has been satisfied.[4]

## IV

The defendant asserts that the trial justice erred in denying his motion for judgment of acquittal on count 1 of the indictment. More specifically, defendant claims that the prosecution's evidence failed to establish that the victim was overcome through the use of "force or coercion." General Laws 1956 (1981 Reenactment) § 11–37–1 provides as follows:

" 'Force or coercion'—shall mean when the accused does any of the following:

(A) uses or threatens to use a weapon, or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon.

(B) overcomes the victim through the application of physical force or physical violence.

(C) coerces the victim to submit by threatening to use force or violence on the victim and the victim reasonably believes that the accused has the present ability to execute these threats.

(D) coerces the victim to submit by threatening to at some time in the future murder, inflict serious bodily injury upon or kidnap the victim or any other person

and the victim reasonably believes that the accused has the ability to execute this threat."

When ruling on a motion for judgment of acquittal, the trial justice, and this court on review, must consider the evidence presented and the inferences which may be drawn therefrom in the light most favorable to the prosecution. *State v. Pignolet*, 465 A.2d 176 (R.I.1983); *State v. Golden*, 430 A.2d 433 (R.I.1981). Unless the evidence viewed in this light is insufficient to warrant a jury verdict of guilt beyond a reasonable doubt, the motion should be denied. *State v. Wilshire*, 509 A.2d 444 (R.I.1986); *State v. von Bulow*, 475 A.2d 995 (R.I.1984). The trial justice concluded that the state's evidence was sufficient to meet the definitional requirements of "force or coercion" under subsections (B) and (C) of the statute. Stating that the word "coerced" means to "restrain or dominate by nullifying individual will," the trial justice made the following ruling:

"[G]iven the defendant's position as a police officer, a figure of authority, if you will, versus the position of the victim given her background, the testimony of the victim briefly outlined above, constitutes legally sufficient and probative evidence to go to the jury as factfinders on all issues, including force or coercion as defined in the statute and further defined by this Court in this decision. Consequently, the motion to acquit on Counts 1 and 2 are denied."

The defendant asserts that since defendant never verbally threatened Valerie, criminal culpability cannot be predicated on § 11–37–1(C). Our decision therefore turns on whether § 11–37–1(C) encompasses implied, as well as express threats. We hold that it does.

We are presented in this case with a unique factual situation. The evidence tends to show that defendant, a uniformed police officer armed with handcuffs and a

---

**4.** Viewing the slight cumulative effect of this additional evidence of bias in light of the totality of the witness's testimony and the extent of the cross-examination, we are of the opinion that the exclusion of such evidence was harmless beyond a reasonable doubt. *See Delaware v. Van Arsdall*, —— U.S. ——, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

gun, used his position of authority to intimidate an alcoholic young woman into performing oral sex upon him. The defendant's position of authority, in and of itself, carries with it an implied threat. In a case involving an instructor and a student at a school for the mentally disabled, the term "coercion" was defined as including the inducement of a person under subjection to the defendant to engage in sexual intercourse against her will. *See State v. Willis,* 370 N.W.2d 193 (S.D.1985). Although this case does not involve a disabled victim, it is our opinion that defendant's position of authority was the determinative factor in the complaining witness's submission to his command.

 An implied threat is as effective as a stated threat, sometimes even more so, especially when the apparent ability to carry out the threat is overwhelming. It is well established that "threats of force need not be made in any particular manner in order to put a person in fear of bodily harm * * *." *State v. Rusk,* 289 Md. 230, 246, 424 A.2d 720, 728 (1981); *see also People v. McGill,* 131 Mich.App. 465, 346 N.W.2d 572 (1984); *Dumer v. State,* 64 Wis.2d 590, 219 N.W.2d 592 (1974). Sexual submission induced by fear is not the product of consent but of coercion. *Cortez v. People,* 155 Colo. 317, 394 P.2d 346 (1964); *State v. Harris,* 70 N.J.Super. 9, 174 A.2d 645 (1961). A command on the part of one who possesses complete authority and overwhelming force to back up that authority need not be accompanied by an explicit threat in order to be effectively coercive.

 We have repeatedly stated that victims need not prove their lack of consent by resisting to the utmost when such resistance would be useless. *State v. Pignolet,* 465 A.2d 176 (R.I.1983); *State v. Carvalho,* 122 R.I. 461, 409 A.2d 132 (1979). In the same vein, we shall not require that a victim hear the actual utterance of threatening words before we shall allow a jury to find reasonable fear of violence. A threat is an expression of an intention to overcome by force. The expression of that intention need not be made in words. *See People v. Barnes,* 42 Cal.3d 284, 721 P.2d

110, 228 Cal.Rptr. 228 (1986) (threats may be verbal or nonverbal). Indeed, a threat is defined as "any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from his acts that free, voluntary action which alone constitutes consent." *State v. Hamre,* 247 Or. 359, 362, 429 P.2d 804, 806 (1967). A threat may consist of the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure. *State v. Pignolet,* 465 A.2d 176 (R.I.1983). If the actor exercises such domination and control of the victim as to put the victim in fear and overcome her will, an implied threat has been made. *Robinson v. State,* 67 Md.App. 445, 508 A.2d 159 (1986).

 We are mindful of the fact that an alleged victim's consent to a request to engage in sexual activity is not always the product of coercion when the person who requests sexual favors is in a position of authority over the alleged victim. Even if the consent is occasioned by an unreasoning or irrational fear on the part of the alleged victim, the sexual activity does not amount to sexual assault. We are not confronted with that type of situation in this case. Here, the factual situation that encompasses the sexual assault crime involves a person in a position of authority who is armed, speaks in terms of peremptory command, and thereby creates the victim's reasonable fear.

 We are convinced that the evidence in this case is sufficient to support a jury verdict of guilt beyond a reasonable doubt. The victim testified that she submitted to defendant's advances because she was afraid of the officer and afraid of his gun. She testified that she refused to take off her clothes and give the defendant a "blow job" when asked. Because defendant was an armed, uniformed police officer, the jury could infer that Valerie reasonably believed that resistance on her part would be fruitless. In fact, the reasonableness of that inference is borne out by the fact that force was later exerted by defendant. He pushed on Valerie's head, forcing her to perform oral sex upon him. He hand-

cuffed her arm. He knelt on top of her, in effect imprisoning her. On a second occasion, he physically pulled Valerie into his police cruiser, verbally threatened not to let her out of the car, and again physically forced her to engage in fellatio.

The evidence presented supports a finding that the victim did not consent to the sexual activity and reasonably believed that resistance would be useless. The defendant abused his apparent position of authority over the victim for the purpose of sexually assaulting her. This appearance of authority, combined with the fact that defendant was armed, and the peculiar vulnerability of the victim are sufficient to support a jury verdict that defendant coerced submission by impliedly threatening the victim within the meaning of § 11-37-1(C). Therefore, we conclude that the trial justice correctly denied defendant's motion for judgment of acquittal.

## V

The defendant cites as error the trial justice's refusal to give the jury the following requested instructions.

"Request No. 3

"(Force or Coercion)

"The burden is on the State to prove beyond a reasonable doubt that the Defendant used force or coercion to commit the offenses charged. Force or coercion means that the accused overcomes the victim through the application of physical force or physical violence. If you have a reasonable doubt whether the Defendant overcame the victim through the application of physical force or physical violence, then you must give the Defendant the benefit of that doubt and find him not guilty. [Citations omitted.]

"Request No. 4

"(Force or Coercion must precede act)

"You are instructed that the force or coercion must precede the act of oral sex. In other words, the force or coercion must occur before the commission of the act. The requirement that there be force or coercion cannot be satisfied by evidence that there was force or coercion after the act. For example, there was

testimony that [Valerie T.] was. handcuffed for a brief period of time after the act or oral sex. This handcuffing could not be used to satisfy the requirement of force and coercion because it came after the act or oral sex. [Citations omitted.]

"Request No. 9

"(Summarizes 1, 2 & 3)

"In summary, the burden is on the State to prove beyond a reasonable doubt, each of the following:

1. That the acts of oral sex complained actually occurred;

2. That the Defendant was the person who committed those acts; and

3. That he used force or coercion, that is physical force or physical violence to commit the acts. If you have a reasonable doubt about any of these factors, you must give the Defendant the benefit of that doubt and find him not guilty."

A trial justice need not instruct the jury in the specific language requested by a party if his charge adequately covers the requested instructions. *State v. Ahmadjian*, 438 A.2d 1070 (R.I.1981); *State v. D'Alo*, 435 A.2d 317 (R.I.1981); *State v. Sharbuno*, 120 R.I. 714, 390 A.2d 915 (1978). As long as he states the applicable law, a trial justice may charge the jury in his own words. *State v. Lambert*, 463 A.2d 1333 (R.I.1983); *State v. D'Alo*, 435 A.2d 317 (R.I.1981); *State v. Verdone*, 114 R.I. 613, 337 A.2d 804 (1975).

In this case, the trial justice's instruction on "force or coercion" differs from the language of the statute only in that the terms "coerce" and "overcome" are further defined.

" 'Force or coercion' shall mean when the accused has done any of the following: (1) overcome the victim through the application of physical force or physical violence. Overcoming meaning to gain superiority, or (2) coerces the victim to submit by threatening to use force or violence on the victim and the victim reasonably believes that the accused has the present ability to execute those threats. Coerce means to restrain or to dominate by nullifying individual will."

■ Since the instruction so closely tracks the language of the statute, it is clear that the trial justice's charge correctly set forth the applicable law and, in so doing, covers defendant's requested instructions.

■ The defendant claims that the trial justice erred in defining the term "coercion" and asserts that the instruction confused the jury. We disagree. It is well settled that words used in a statute must be given their plain and ordinary meaning. *See, e.g., State v. O'Rourke,* 463 A.2d 1328 (R.I.1983); *Blazar v. Perkins,* 463 A.2d 203 (R.I.1983); *Rathbun v. Leesona Corp.,* 460 A.2d 931 (R.I.1983). In explaining the meaning of the term "coercion," the trial justice utilized a dictionary definition. "[A] judge is not limited to the precise language of the statute when instructing a jury. Rather, to perform this function properly, a trial justice must explain the law in the most understandable terms for the jury's guidance and deliberation." *State v. Pignolet,* 465 A.2d at 183. Here, the trial justice's instruction assisted, rather than confused, the jurors by providing them with the plain and ordinary meaning of the statutory term "coercion."

■ The defendant further asserts that the jury should have been instructed solely on § 11–37–1(B), concerning the application of physical force and violence to overcome the victim, and that the trial justice erred in charging the jury as on § 11–37–1(C). In a criminal case, jury instructions should set forth all essential legal principles that are supported by the evidence. *See, e.g., State v. Durand,* 465 A.2d 762 (R.I.1983); *State v. Conway,* 463 A.2d 1319 (R.I.1983); *State v. D'Alo,* 435 A.2d 317 (R.I.1981). As we have previously stated, the prosecution presented evidence sufficient to warrant a finding that the defendant "coerce[d] the victim to submit by threatening to use force or violence on the victim and the victim reasonably believe[d] that the accused ha[d] the present ability to execute these threats." Section 11–37–1(C). Therefore, we find that the trial justice correctly instructed the jury on the issue of "force or coercion."

For the reasons stated, the defendant's appeal is denied and dismissed, the judgments of conviction are affirmed, and the papers in the case are remanded to the Superior Court.