STATE

v.

Raymond STAFFIER.

No. 2009–204–C.A.

Supreme Court of Rhode Island.

June 15, 2011.

Lauren S. Zurier, Department of Attorney General, for State.

Janice M. Weisfeld, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J.,
GOLDBERG, FLAHERTY, ROBINSON,
and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on May 4, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. Raymond Staffier (Staffier or defendant) appeals from a conviction of three counts of second-degree child molestation, for which he was sentenced to fifteen years at the Adult Correctional Institutions (ACI), with six years to serve and nine years suspended on each count, all sentences to run concurrently.[1] Staffier also was acquitted of one charge of second-degree child molestation. On appeal, the defendant contends that the trial justice erred by denying his motion for a new trial and by allowing one of the state's witnesses to testify. After reviewing the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown; thus, the appeal may be decided at this time. For the reasons set forth below, we affirm the judgment of conviction.

### Facts and Travel

Growing up, Harriet and her older brother, Charles, spent every Saturday at their grandmother's house while their parents both were at work.[2] Their grandmother, Janice, lived with defendant, her longtime boyfriend, whom Harriet called "Papa," and whom she had known her

---

1. Staffier has served his six-year sentence and currently is serving his suspended sentence.

2. Because the complaining witness was a minor when the molestations occurred, we shall use a pseudonym to protect her privacy. We also shall use pseudonyms for all family members involved in this case.

entire life. During the Saturday visits, Charles often played outside or at a neighbor's house, while Harriet sometimes accompanied her grandmother to the nail salon, where Janice went every other Saturday. When Harriet did not go with her grandmother, she and defendant often were alone at the house together. After years of this routine, in April 2002, Harriet's family moved to West Warwick and Harriet's mother stopped bringing her children to the house where Janice and defendant lived. One day after the family moved, Harriet confided in her mother that defendant had been molesting her.

Harriet's mother went to the police, and in July 2002, defendant was charged with four counts of second-degree child molestation, in violation of G.L.1956 §§ 11–37–8.3 and 11–37–8.4. Counts 1, 2 and 3 alleged that the crimes occurred between October 1999 and April 2002, and count 4 alleged that defendant molested Harriet on or about April 27, 2002, the Saturday immediately preceding the family's move to West Warwick. A jury trial began in October 2003; after the trial justice entered a sequestration order requiring witnesses who expected to testify to leave the courtroom, the state began its case-in-chief.

Ten-year-old Harriet was the state's lead witness.[3] She testified generally about where her family lived and how she and her brother spent Saturdays with their grandmother and defendant. She then explained that she often was alone with defendant and spoke about what happened when both her grandmother and brother had gone out. According to Harriet, she and defendant would sit together on the living room couch, and defendant— frequently wearing nothing but a t-shirt and underwear—would take his penis out of his pants and instruct Harriet to "rub his private." When she was reluctant to do so, he would make a "sad face" and would tell her that she could not leave before giving him "[a] hug, a kiss and * * * [his penis] a squeeze." She also testified that he would touch her in between her legs, underneath her clothing, but that he never penetrated her.

Harriet could not remember when the molestation began, but believed it was when she was seven or eight years old. She testified that it had happened "a lot"—closer to fifty times than ten—and that once it began, defendant made her touch his penis every Saturday that she spent there. She testified that the final time he touched her was just before she and her family moved to West Warwick in April 2002.

At the close of the state's case-in-chief, defendant moved for a judgment of acquittal, which was denied. The defendant then testified and described his relationship with Harriet. He insisted that they were affectionate with each other as any grandparent and grandchild would be; he added that Harriet would kiss him and sit on his lap and constantly ask him to scratch her legs, arms, back and stomach. He also testified that, contrary to Harriet's testimony, the two of them rarely were alone together—adamantly declaring that during the period that Harriet alleged he molested her, Harriet accompanied Janice to the salon every time she went. Janice corroborated defendant's testimony about the infrequency with which defendant and Harriet were alone together and with respect to Harriet's affection toward him. Two additional witnesses testified about their opinion that defendant was a very truthful person.

---

**3.** The complainant was born in October 1993.

Apparently sometime during the defense case, Harriet's maternal grandfather, John, approached the prosecutor after hearing defendant's and Janice's testimony about how Harriet would ask them to scratch her stomach. During a sidebar conference, the state acknowledged that calling John to testify would go against the sequestration order because he had been present during defendant's and Janice's testimony, but also reiterated that the state never had intended to call him as a witness. The trial justice allowed the testimony, determining that because John's testimony was in direct response to testimony presented by the defense, there would be no prejudice to defendant. John then testified as a rebuttal witness for the state, explaining that in all the times Harriet came to his home—three to four times a week in the last few years—Harriet asked to have her back scratched, but never once asked to have her stomach scratched.

At the close of the evidence, defendant renewed his motion for an acquittal, which was denied. The case was submitted to the jury, and a verdict of not guilty was returned on count 1 with a finding of guilt on the remaining three counts. Three months later, in January 2004, the trial justice heard and denied defendant's motion for a new trial and sentenced him to fifteen years at the ACI, with six years to serve on all counts; the sentences to run concurrently.

The defendant filed a *pro se* appeal to the Supreme Court in February 2004.[4] On appeal, defendant argues that the trial justice abused her discretion by denying his motion for a new trial because, he contends, the guilty verdicts fail to do substantial justice in light of the not-guilty verdict on count 1. He also argues that the trial justice abused her discretion by allowing John to testify in contravention of the sequestration order.

## Analysis

### I

### Motion for a New Trial

 "[W]hen reviewing a motion for a new trial, the trial justice must determine 'whether the evidence adduced at trial is sufficient for the jury to conclude guilt beyond a reasonable doubt.'" *State v. Peoples*, 996 A.2d 660, 664 (R.I.2010) (quoting *State v. Stone*, 924 A.2d 773, 779 (R.I. 2007)). When making this determination, "the trial justice acts as a thirteenth juror, exercising 'independent judgment on the credibility of witnesses and on the weight of the evidence.'" *State v. Heredia*, 10 A.3d 443, 446 (R.I.2010) (quoting *State v. Imbruglia*, 913 A.2d 1022, 1028 (R.I.2007)). "Specifically, 'the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury.'" *Heredia*, 10 A.3d at 446 (quoting *State v. Texieira*, 944 A.2d 132, 140 (R.I. 2008)).

 If the trial justice agrees with the jury's verdict, the inquiry is complete and the motion for a new trial should be denied. *State v. Morales*, 895 A.2d 114, 121 (R.I.2006). If, however, the trial justice does not agree with the jury verdict, he or she is required to proceed to a fourth step in the new trial analysis to "determine whether the verdict is against the fair preponderance of the evidence and fails to

4. The defendant initially failed to have the record submitted to this Court. Once represented by the Public Defender's Office, counsel sought and was granted leave to file the record out of time. The appeal was docketed thereafter.

do substantial justice. If the verdict meets this standard, then a new trial may be granted." *State v. Guerra,* 12 A.3d 759, 765–66 (R.I.2011) (quoting *State v. Rivera,* 839 A.2d 497, 503 (R.I.2003)). If the trial justice has "articulated an adequate rationale for denying" the motion for a new trial, and has not misconceived or overlooked material evidence, we accord his or her ruling great weight and will leave it undisturbed. *State v. Rodriguez,* 996 A.2d 145, 149 (R.I.2010) (quoting *State v. Bergevine,* 942 A.2d 974, 981 (R.I.2008)); *see also Heredia,* 10 A.3d at 446 (citing *State v. Horton,* 871 A.2d 959, 967 (R.I.2005)).

■ The defendant argues that the trial justice erred by denying his motion for a new trial because the inconsistent verdicts fail to do substantial justice and that this inconsistency cannot logically be explained. The defendant's argument is misplaced. The trial justice is required to review a verdict for substantial justice only when the trial justice disagrees with the jury's verdict and is therefore required to proceed to the fourth prong of the analysis. *See Guerra,* 12 A.3d at 765–66 (citing *Rivera,* 839 A.2d at 503). Here, the trial justice reviewed the evidence, noted that Harriet made a "very credible child witness[,]" and she held that "[i]n this [c]ourt's judgment[,] reasonable jurors in this case could have accepted the testimony of the child victim * * * and rejected the testimony of [defendant] so as to convict the defendant of all of the charges of unlawful sexual contact reflected by the jury's verdict." The trial justice ultimately found that the verdict was strongly supported by the evidence; she also addressed the alleged inconsistent verdicts:

"In finding the defendant not guilty of [c]ount 1, the jury may have viewed the charge as alleging and including a sexual contact at an earlier age in 1999 when [Harriet] was six, which would have con-tradicted her testimony of not recalling a touch at that young of an age.

"The three subsequent counts of which the jury convicted the defendant logically included, at a minimum, one incident of her being touched vaginally at age eight, one incident of her touching the defendant's penis at age eight, and the last incident of touching * * * in April of 2002, all specific events that she talked about occurring at least once at age eight within that time frame as charged in the counts * * *."

We are of the opinion that the trial justice considered all the evidence in light of the jury charge, independently assessed the credibility of the witnesses, and determined that Harriet made a credible complaining witness. The trial justice found that there was sufficient evidence for the jury to find defendant guilty of the three counts. She articulated an adequate rationale for denying the motion, and, having neither misconceived nor overlooked material evidence, the trial justice's inquiry rightfully ended when she agreed with the jury's verdict.

Additionally, after concluding that she agreed with the jury's verdicts, the trial justice emphasized that "[i]t [was] an intelligent verdict as shown by the jury's acquittal of this defendant as to [c]ount 1 and also, without question, does justice in this case." We agree with her analysis and discern no error in her conclusions. The charges set forth in the information did not require an all-or-none decision, and in fact each count should have been viewed as if it were a separate indictment. *See State v. Allessio,* 762 A.2d 1190, 1191 (R.I.2000) (discussing the rule laid out in *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932) (Holmes, J.), that "[c]onsistency in the verdict is not necessary[,] [e]ach count in an indictment is regarded as if it was a separate

indictment"). The trial justice correctly instructed the jury that a conclusion on one count should not itself determine the outcome of the remaining counts. The verdicts clearly reflect that the jury understood its duty to examine the counts separately and, further, that the state had proven beyond a reasonable doubt defendant's guilt on three counts in the information but not with respect to the first count.

■ We also recognize that in cases in which juries reach inconsistent verdicts on different counts of the same information, "the jury may reach compromises through a variety of motivations, including leniency." *Allessio,* 762 A.2d at 1191 (citing *State v. Romano,* 456 A.2d 746, 764 (R.I. 1983)). As the trial justice noted, the jury could have concluded that because the first count was alleged to have taken place beginning in 1999, prior to the time when Harriet recalled being molested, it was not proven beyond a reasonable doubt. Regardless of the rationale behind the jury's verdicts, the mere fact that defendant was acquitted of one charge but found guilty of the remaining counts is not logically or legally inconsistent. *See State v. Jette,* 569 A.2d 438, 441 (R.I.1990) (affirming the denial of a motion for a new trial when the defendant was found guilty of penile penetration but not guilty of penetration with a foreign object and digital penetration and noting that the case involved three separate counts of sexual assault and that acquittal of one count did not amount "to a finding that the elements of another offense could not be prove[n]"). For the foregoing reasons, we affirm the denial of defendant's motion for a new trial.

## II

### Admissibility of Rebuttal Witness

■ The defendant next contends that the trial justice erred by allowing John to testify in violation of the sequestration order. Rule 615 of the Rhode Island Rules of Evidence permits a trial justice to "order witnesses excluded so they cannot hear the testimony of other witnesses." We have held that this is an exercise of discretion, and that a decision to exclude or not exclude a witness will not be disturbed absent an abuse of discretion. *State v. Perez,* 882 A.2d 574, 583 (R.I.2005) (citing *State v. Mathias,* 423 A.2d 484, 486 (R.I.1980)). We also have noted that "[t]he purpose of sequestration is to prevent witnesses from shaping their testimony to match that given by other witnesses, * * * thereby assuring a greater likelihood of arriving at the truth." *Mathias,* 423 A.2d at 486 (citing *State v. Cyrulik,* 100 R.I. 282, 284, 214 A.2d 382, 383 (1965)).

In this case, the trial justice ordered that "any witnesses should leave the [c]ourtroom if you are someone who expects to be testifying in the presence of other witnesses." Because he was not anticipating being called as a witness, John remained in the courtroom and heard defendant and Janice testify that Harriet frequently asked them to scratch her stomach. Disagreeing with that statement, at least as it pertained to his experience with Harriet, he approached the prosecutor. What transpired here is similar to the facts of *State v. Burke,* 522 A.2d 725 (R.I.1987), in which the defendant had sought to call witnesses who had not been sequestered during the state's case to rebut testimony of the complaining witness. *Id.* at 729. The defendant in *Burke* had had no intention of calling the individuals as witnesses until after the complaining witness testified, and the proposed testimony was offered to impeach the state's complaining witness rather than to corroborate the testimony of a defense witness. For these reasons, we stated that "it [was] highly questionable that the [witnesses] or

[the] defendant violated the sequestration order at all, but if a retroactive violation could be discerned, it would obviously be wholly unintentional. The preclusion of testimony based solely on an unintentional violation of the order was unwarranted." *Id.*

Here, it is undisputed that the state had no intention of calling John to testify in this case. If this were deemed a violation of the sequestration order, it appears to have been unintentional. Further, John's testimony called into question the defendant's and Janice's credibility and therefore did not undermine the purpose of the sequestration order, which was to prevent collusion or the shaping of testimony. Lastly, any potential harm to the defendant clearly was addressed by the trial justice when she noted that the defendant could elicit testimony to the effect that this witness had been in the courtroom during defense testimony and was testifying in direct response to what the defendant and Janice had said on the stand. For all these reasons, we are satisfied that the trial justice did not abuse her discretion when she allowed this testimony.[5]

### Conclusion

For the reasons set forth in this opinion, the judgment of the Superior Court is affirmed. The papers in this case may be returned to the Superior Court.

---

**5.** We note that although *State v. Burke,* 522 A.2d 725 (R.I.1987) dealt with a criminal defendant's rebuttal evidence, the analysis of whether it was intended that the witness would be called, and the substance of that witness's testimony—whether it is corroborative or impeaching—apply equally to whether the court should allow a prosecution's rebuttal witness to testify.