**STATE**

v.

**Wilfret JOHNSON.**

**No. 95–543–C.A.**

Supreme Court of Rhode Island.

Jan. 10, 1997.

---

Aaron Weisman, Asst. Attorney General, Andrea Mendes, Special Asst. Attorney General, for Plaintiff.

Paula Rosin, Public Defender, for Defendant.

## OPINION

PER CURIAM.

This case came before the court for oral argument November 12, 1996, pursuant to an order that had directed both parties to appear in order to show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues should be decided at this time. The defendant, Wilfret Johnson, has appealed from a judgment of conviction of assault with a dangerous weapon resulting in serious bodily injuries in violation of G.L.1956 § 11-5-2 after a jury trial in the Superior Court. The facts of the case insofar as pertinent to this appeal are as follows.

The defendant was found to have brutally beaten Wilson Velasquez (Velasquez) on April 6, 1993, to the extent that he suffered permanent injury. The beating arose because Velasquez had spent money derived by his common-law wife, Ivonne Otero (Otero), from the sale of drugs with which she was

supplied by defendant. When defendant came to collect the money from the cocaine sales, Velasquez's diversion of the funds apparently became known. Otero testified at trial that defendant took the victim down to the ground-floor level from the third floor and began beating him and striking him in the face and head. Otero observed this activity from the third floor window. When defendant had completed his battering of the victim, he told the common-law wife to "come down and see how pretty I left him." When she went to look at her husband, Otero found him unconscious. He was bleeding, and his neck and forehead were badly swollen. She testified that he was taken to Rhode Island Hospital and remained there for approximately six months. He was then transferred to Zambarano Hospital and later placed in a nursing home in New York. She further testified that Velasquez is unable to communicate and has to be fed through a feeding tube.

Richard Toselli, M.D., a neurosurgeon, also testified that he examined the victim and concluded that his injuries had been caused by blunt-instrument trauma to the head. He advanced the opinion that the victim's prognosis was poor. Otero had identified the perpetrator to the police as "Will from Putnam Street." With this information the police had obtained a warrant and placed defendant under arrest.

Another witness, Tonia Heyder, also testified that she observed the beating on the night of April 6, 1993, when she heard screaming. She looked out her window and saw a taller man stomping or kicking a person on the ground. This is the same date on which Otero testified that the battery had taken place.

The defendant presented his cousin Darrell Williams (Williams) and another cousin Joyce Long (Long), as alibi witnesses. Williams testified that he was with defendant on the evening of April 6, 1993, until 11 p.m. They were making plans for a birthday party. Long corroborated this testimony by stating that she knew a birthday party was being planned on April 6, 1993, but she disclaimed knowledge concerning what defendant was actually doing on that date.

The defendant raises four issues in support of his appeal.

I

The In–Court Identification

■■■ The defendant moved to suppress the in-court identification on the ground of Otero's admitted drug addiction. The trial justice denied the motion to suppress, observing that Otero had known defendant for a period of three months, that she had frequent contacts with him, and that her identification thus had an independent basis of reliability. In so holding, the trial justice's decision was amply supported by the evidence. Reliability is the linchpin of admissibility-of-identification evidence. *See Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Here there was no indication of any pretrial suggestion in the identification procedure. Otero's competence as a witness was a factual matter for the trial justice in the first instance, and her credibility was a question of fact for the jury. In the totality of circumstances the identification was certainly reliable enough to be admitted and sufficiently credible to be believed.

II

Production of Medical Records

■■■ The defendant argues that the state did not produce medical records relating to the victim's medical condition as of the time of trial and that Otero should not have been permitted to testify concerning her common-law husband's condition. The trial justice correctly ruled that the current medical condition of victim was not relevant to the charge of felony assault. Certainly Otero could testify concerning her observations, even though she could not and did not purport to make a medical diagnosis. The testimony of Dr. Richard Toselli, the neurosurgeon, was certainly more than sufficient to establish the serious bodily injuries caused by defendant's beating of the victim. No more was required to establish the crime of felony assault.

### III

### Speedy Trial

■ The defendant further argues that the trial justice erred in denying his motion to dismiss the charge against him because he was denied his Sixth Amendment right to a speedy trial. The elapsed time from the filing of the criminal information to the time of trial was fourteen months. This interval triggers the test enunciated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). This test includes (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant resulting from the delay. *Id.* at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. When we apply this test, defendant's contention must fail.

At the time of the filing of the criminal information in February of 1994, defendant had been adjudged a violator of his probationary status on a prior offense and was incarcerated. At that time defendant was represented by the Office of the Public Defender. The first motion made by defendant to assign his case for trial was filed on August 26, 1994. By that point the public defender had moved to withdraw as counsel for defendant and defendant had filed a pro se motion to dismiss the public defender. Indeed, the request for assignment related to the motion to withdraw, not to setting a date for trial. From the time of the violation hearing to the time of trial, defendant was represented by several attorneys. He filed a pro se motion to assign his case for trial on October 20, 1994. In light of defendant's difficulty in finding satisfactory appointed counsel (if one begins counting with the violation hearing, he was represented by his sixth attorney at the time of trial), it could scarcely be stated that he was aggressively pursuing his right to a speedy trial. *See Tate v. Howard,* 110 R.I. 641, 296 A.2d 19 (1972). Applying the *Barker* test, the trial justice was not in error in attributing the reason for delay to defendant in great part in finding that he had not vigorously asserted his right to a speedy trial and further that defendant was not prejudiced by the fourteen-month interval.

### IV

### Motion to Pass

■ The defendant further contends that the trial justice erred in declining to pass the case when defendant asserted his lack of confidence in his appointed counsel. The defendant had filed a pro se motion prior to trial to dismiss his attorney. The attorney also filed a motion to withdraw prior to the commencement of trial. A justice of the Superior Court other than the trial justice denied the attorney's motion. On the last day of a three-day trial defendant again expressed dissatisfaction with his attorney. However, he did not move for a mistrial at that time. Consequently this issue has not been preserved for review.

■ However, even if we examine the claim on its merits, we hold that the trial justice did not abuse his discretion by failing sua sponte to abort the trial at that time. *See State v. Usenia,* 599 A.2d 1026 (R.I.1991). Further, had the trial justice declared a mistrial without the specific request of the defendant so to do, a significant problem of double jeopardy would have arisen. *See United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

For the reasons stated, the appeal of the defendant is denied and dismissed. The judgment of conviction is affirmed.