**STATE**

v.

**Charles COTE.**

No. 95–187–C.A.

Supreme Court of Rhode Island.

March 11, 1997.

Lauren Sandler Zurier, Asst. Attorney General, Aaron Weisman, Asst. Attorney General, for Plaintiff.

John E. MacDonald, Janice Weisfeld, Asst. Public Defenders, Paula Rosin, Asst. Public Defender, Richard Casparian, Public Defender, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG and FLANDERS, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before the court on the appeal of the defendant, Charles Cote, from a judgment of conviction entered in the Superior Court upon a jury verdict finding him guilty of four counts of first-degree sexual assault in violation of G.L.1956 § 11–37–2.[1] The trial justice denied the defendant's motion for a new trial and sentenced him to sixty years' imprisonment on each count, with forty years to serve, twenty years suspended, and twenty years' probation. The sentences imposed on counts 1 and 2 run consecutively with the sentences imposed on counts 3 and 4. For the reasons stated herein, we affirm the judgment of conviction. The facts of the case insofar as pertinent to this appeal are as follows.

The complaining witness, Jane Doe (a fictitious name), was born on January 13, 1972, and was twenty-two years of age at the commencement of trial. When Jane was four years old, her mother and father divorced. Soon thereafter Jane's mother married defendant. At the age of nine Jane moved out of her father's home and went to live with defendant, her stepfather, and with her mother and brother. The family resided in West Glocester, Rhode Island.

Jane testified that soon after she moved into the West Glocester home at the age of nine until she disclosed the fact of the assaults to her brother and her mother at the age of ten and a half, defendant sexually molested her in a series of acts of escalating intensity. She stated that once or twice a week she would be left home alone with defendant. During this time defendant would expose himself to her, masturbate in front of her, and often times force her to touch his penis with her face or hands. Jane testified that defendant regularly entered her bedroom late at night, waking her by rubbing her breasts, digitally penetrating her vagina, and forcing her to touch his penis. By the time Jane was ten years of age, defendant had performed cunnilingus upon her and had also forced her to perform fellatio upon him. He threatened Jane that if she told anyone about their "secret," she would be disbelieved, her family would stop loving her, and she would be sent away from home to live at a school for "bad" girls. When Jane reached the age of ten and a half, defendant coerced her to engage in sexual intercourse. Approximately two weeks later Jane told her brother (who is two years her senior) that defendant had been "touching" her. Immediately thereafter Jane told her mother that defendant was "doing something to her, and that she didn't like it." Jane's mother then confronted defendant, who denied any wrongdoing. After the confrontation, however, the assaults stopped.

Even though defendant had stopped assaulting her, Jane testified, she remained fearful of him. She alleged that defendant would watch her bathe from an outside bathroom window or through a hole in the bathroom floor. She recounted the events of one night when defendant entered her bedroom with a gun and threatened to kill himself. In February of her last year of high school Jane moved out of defendant's home. Before graduation she revealed the assaults to a school counselor, who then notified the police. The following day Jane provided the police with a statement.

Jane's mother, Mary, and brother, Randy, also testified at trial. Their testimony sub-

---

1. The defendant was charged with first-degree sexual assault pursuant to G.L.1956 § 11–37–2 rather than first-degree child molestation pursuant to G.L.1956 § 11–37–8.1 because § 11–37–8.1 had not been enacted at the time defendant is alleged to have committed the assaults.

Two earlier trials charging defendant with committing the above offenses had ended in mistrials because of the state's inadvertent failure to comply with the rules of discovery.

stantially corroborated Jane's testimony. Randy recalled Jane's telling him, when she was approximately ten years of age, that defendant had "touched" her and that she wanted him to tell their mother about it. Mary recounted an incident that occurred when Jane was approximately seventeen years of age. She and defendant were having sexual relations when defendant told her to bring Jane into their bedroom so that he could show her how to have sexual intercourse. Mary refused. Mary also testified that after Jane pressed charges she and defendant met with a defense attorney. During this meeting defendant admitted to having touched Jane "once." After the meeting, however, defendant told Mary that although he had done "something" to Jane, he had not touched her. Sometime later Mary demanded a divorce from defendant. In response defendant allegedly exclaimed that "[e]verything that [Jane] * * * said * * * I did to her I did, and I'm not sorry for it." On cross-examination, however, Mary admitted that when she first spoke with police, she told them that Jane was lying about the assaults. She and Randy also conceded that they never saw defendant act inappropriately toward Jane.

After Mary had asked defendant for a divorce, she found a four-page letter in defendant's handwriting dated Christmas Eve and Christmas Day of 1990. The letter had been written about one week before defendant was to appear for a pretrial proceeding on the pending charges. In the letter defendant stated that he missed Mary. He also wrote the following:

> "Please god help me, I'll do what I have to, to keep my freedom and [Jane] is going to hate me the Rest of my Life. I hope that I can except that she is alway's going to be that way. I asked for her forgiveness and prayed that I will be a stepfather to her. That is Something she will have to find in her heart, to trust and Love again."

In an attempt to counter Jane's allegations, defendant took the stand and denied committing the charged offenses. The de-

fense claimed that Jane fabricated the charges of abuse because she resented him for being a strict disciplinarian and for taking the place of her biological father. He had asked for Jane's forgiveness in the letter, he explained, because when she was sixteen years of age, he had taken her car from her after she had used the vehicle to run away from home. The defendant also claimed that his estranged wife, Mary, had a financial motive to provide false testimony at trial. If convicted and sentenced to a term of life imprisonment, defendant contends, Mary could seek to have him declared civilly dead and probate his estate.

Four defense witnesses testified at trial that defendant's reputation for truthfulness in the community of Chepachet[2] is good and that he is a trusted man. Defense counsel also made several unsuccessful attempts to introduce evidence of Jane's reputation in the community for untruthfulness. The defendant questions the propriety of two of the trial justice's evidentiary rulings on appeal. These issues will be considered in the order in which they were raised in defendant's brief. Further facts will be supplied as necessary to deal with these issues.

## I

### Proffered Reputation Testimony

During a pretrial conference defense counsel proffered the testimony of Eleanor Chagnon (Chagnon) pursuant to Rule 608(a) of the Rhode Island Rules of Evidence for the purpose of establishing that Jane had a reputation in the community of Chepachet as untruthful. Defense counsel asserted in an offer of proof that Chagnon had known Jane for over fifteen years, was aware of her reputation in the community for questionable veracity, and was prepared to testify that Jane's reputation for truthfulness was poor. The trial justice expressed the opinion that the testimony was inadmissible but reserved final determination of the matter until a later time.

---

2. Chepachet is a section of Glocester, Rhode Island, wherein defendant and his family resided. Jane lived in Chepachet from the age of nine

until sometime before the commencement of trial, at which time she moved to North Smithfield, Rhode Island.

Defense counsel made a second attempt to introduce Chagnon's reputation testimony at the close of the state's case. Preceding this attempt, the trial justice advised counsel that, pursuant to this court's decision in *State v. James*, 557 A.2d 471, 473 (R.I.1989), it is improper for one witness to comment on the credibility of another witness. Thereafter the following colloquy took place between the trial justice and defense counsel:

"[Defense counsel]: Judge * * * if allowed * * * Mrs. Chagnon would testify she has known * * * [Jane] for a number of years, over fifteen years. [Jane]—is a friend of her daughter. They grew up together. [Jane] in this tight-knit community they live in—Ms. Chagnon is aware of a number of people who know [Jane] in the community, and is aware of their opinion of [Jane]. And, as far as truthfulness is concerned she will testify that their opinion is that she is a person who does not tell the truth. This is the entire gist of her testimony concerning [Jane].

"[The court]: So, she's going to come here and tell us what other people think of [Jane's] character for truthfulness?

"[Defense counsel]: Exactly.

"[The court]: All right. I'm not going to permit it. Simple as that.

"[Defense counsel]: Note my objection.

"[The court]: Yes. Objection may be noted. * * * But, since that is in the nature of a motion in limine I am telling you now that she cannot get here and testify that she knows lots of people in Chepachet * * * [and] all those people * * * think that [Jane] doesn't tell the truth. Does that complete everything?"

■ Before resting his case, defense counsel sought for a third time to present Chagnon's reputation testimony to the jury. The trial justice denied the request. The defen-

dant contends on appeal that the refusal of the trial justice to admit Chagnon's testimony concerning Jane's reputation for untruthfulness constituted reversible error. The record does not enable this court to determine Chagnon's competency to testify concerning Jane's reputation for truthfulness.

■ It has long been recognized that testimony of a character witness called for the purpose of establishing another witness's reputation in the community for veracity is generally admissible. *State v. Sepe*, 122 R.I. 560, 568–69, 410 A.2d 127, 131–32 (1980); *Kolb v. Union Railroad Co.*, 23 R.I. 72, 75–78, 49 A. 392, 393–94 (1901). Chagnon's testimony was tendered pursuant to this common-law doctrine, now codified in Rule 608(a) of the Rhode Island Rules of Evidence.[3] Rule 608(a) is an exception to the general prohibition against character evidence proffered for the purpose of proving that a person acted in conformity with his or her character on a particular occasion. *See* R.I. R. Evid. 404(a)(3).

Notwithstanding the relevance of reputation evidence in cases such as the present one, a witness may not testify to the reputation of another witness unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. R.I. R. Evid. 602. As was noted by Justice Jackson in an analogous setting:

"the witness must qualify to give an opinion by showing such acquaintance with the defendant, the community in which he [or she] has lived and the circles in which he [or she] has moved, as to speak with authority of the terms in which generally he [or she] is regarded." *Michelson v. United States*, 335 U.S. 469, 478, 69 S.Ct. 213, 219, 93 L.Ed. 168, 175 (1948).

Similarly in *State v. Di Noi*, 59 R.I. 348, 361–62, 195 A. 497, 503 (1937), a defendant

---

3. Unlike the common-law approach, Rule 608(a) of the Rhode Island Rules of Evidence also provides for the credibility of a witness to be attacked by opinion evidence. *See* John W. Strong et al, *McCormick on Evidence* § 43 at 59 (4th ed. 1992). Thus an impeaching witness, if qualified as such, may state his or her own opinion of another witness's character for truthfulness or untruthfulness. Specifically, Rule 608 provides in pertinent part:

"(a) *Opinion and Reputation Evidence of Character*. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."

sought to put his character at issue by presenting a witness to say he had no reputation in the community as being quarrelsome. This court acknowledged the competency of negative-reputation evidence when the character witness is sufficiently familiar with the defendant's residence or circle of acquaintances. However in *Di Noi* we upheld the exclusion of the proffered testimony because the character witness had no knowledge of the defendant's reputation. *Id.* In fact the witness had only known the defendant for eight months and had never discussed his reputation with anyone. *Id.* We see no reason to apply a lower standard of reliability, as demonstrated by personal knowledge, in the context of Rule 608(a) than did the court in *Di Noi.*

█ In addition to the requirement of personal knowledge, this court has indicated that "[t]he crucial time when the character of the witness under attack has its influence on his [or her] truth-telling is the time when he [or she] testifies." *Sepe,* 122 R.I. at 568, 410 A.2d at 132 (quoting *McCormick's Handbook of the Law of Evidence* § 44 at 92 (2d ed. Cleary 1972)). Testimony concerning a witness's reputation for truthfulness as of any time *before* trial is admissible if the trial justice determines the evidence not too remote to be significant. 122 R.I. at 568, 410 A.2d at 132; *cf. Vaughn v. Clarkson,* 19 R.I. 497, 498, 36 A. 1135, 34 A. 989, 989 (1896) (per curiam) (a woman's reputation for virtue in another country in other circumstances five years before the commencement of an action is too remote to be admissible).[4]

█ The state contends that the trial court properly excluded Chagnon's reputation testimony because defense counsel had failed to make a sufficient offer of proof to enable the court to receive the testimony into evidence. "The purpose of an offer of proof is to enable the court to determine the materiality, relevance, and competence of the evidence." *State v. Almeida,* 111 R.I. 566, 570, 304 A.2d 895, 898 (1973). This court examines the offer of proof to determine whether

the trial justice's rejection of the proffered testimony prejudiced the defendant's case. *Id.*

█ In the case at bar the offer of proof was insufficient to establish a foundation for the admissibility of reputation evidence. It was the burden of the proponent of the evidence to satisfy the requirements of knowledge of the witnesses' reputation in the community, the timeliness of that knowledge and its proximity to the time of trial. *Cf. Atlantic Paint & Coatings, Inc. v. Conti,* 119 R.I. 522, 527, 381 A.2d 1034, 1036 (1977) (proponent bears the burden of showing that proposed evidence was material and its exclusion prejudicial). An examination of the colloquy between the trial justice and defense counsel discloses that these elements were not satisfied. Her awareness of a number of people was not identical to establishment of a general reputation in the community.

Moreover, we note from the limited record on this subject that Jane had left the community of Chepachet to live in the community of North Smithfield sometime prior to the commencement of trial in November of 1994. There is also an indication in the record that she had moved from defendant's home to another nearby location during her last year of high school. The many questions concerning the association of Chagnon with Jane, the duration of that association, and the circles within which they had common acquaintance among the members of the Chepachet community are left open to the merest of speculation.

█ We concede that the trial justice did not directly address the adequacy of a foundation for the admission of reputation evidence but seemed to concentrate on the proposition that one person should not be allowed to testify on the credibility of another person. Nevertheless it remained the obligation of defendant either to provide all the necessary elements of foundation in his offer of proof or to have requested a voir dire examination of Chagnon outside the presence

---

4. Relevant reputation testimony may also be excluded if the trial justice finds, on balance, that "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." R.I. R. Evid. 403.

of the jury. In this case counsel fulfilled neither obligation. Since the offer of proof was inadequate, we cannot fault the trial justice for having rejected it. In instances when the offered testimony suggests or poses a question about its materiality or competency, the offer of proof must indicate the facts on which relevancy or admissibility of the testimony depends. *See, e.g., Palazzolo v. Rahill,* 121 R.I. 31, 35, 394 A.2d 690, 692 (1978) (no abuse of discretion in excluding proffered evidence where offer of proof omitted facts establishing witness's qualifications to testify); *Manning v. Redevelopment Agency of Newport,* 103 R.I. 371, 379, 238 A.2d 378, 382–83 (1968) (" the offer [of proof] should be reasonably specific, rather than general, should include a statement of the facts to which the witness would testify, should indicate the purpose and object of the proof offered, and should establish that the evidence sought to be elicited is admissible") (citations omitted); *see also* John W. Strong, *McCormick on Evidence,* § 51 at 73 (4th ed. 1992).

## II

### Purported Evidence of Bias

 The defendant also contends that the trial justice's decision to exclude testimony concerning the value of his home prevented him from disclosing to the jury Mary's bias in providing false testimony at trial. He asserts that the exclusion of this testimony denied him his Sixth and Fourteenth Amendment rights to present an effective defense. We disagree.

Mary admitted on cross-examination that she did not believe her daughter's allegations until after she had read her witness statement. Yet defendant asserts that Mary came to believe Jane's allegations only after she filed for a divorce from him and acquired a financial interest in his conviction. He contends that Mary and her divorce attorneys endeavored to use the pending criminal charges against him to pressure him into *selling* the marital domicile for $10,000, the amount of the remaining mortgage on the property.

At trial defense counsel cross-examined Mary on the issue of bias. He established that Mary had agreed to stay the divorce proceeding at the request of defendant until the conclusion of his criminal trial. Defense counsel also established that Mary and defendant were residing apart from each other and that Mary was living in the marital domicile. The marital domicile was first owned by defendant's father, but at the time of defendant's criminal trial title to the property was held by Mary and defendant as joint tenants. Mary denied, however, any knowledge that her divorce attorney had attempted to purchase the marital home from defendant for $10,000.

In response to Mary's denials, defendant took the stand and testified that Mary herself had offered him $10,000 for the home. However, the trial justice precluded defendant from testifying that the house had a market value greater than $10,000 or that the parties had agreed upon a divorce settlement regarding the property. The defendant contends that the trial justice's exclusion of this testimony was error because once Mary denied making the $10,000 offer, he had a right to introduce extrinsic evidence of the home's value to impeach her testimony.

Important to an accused's right to confrontation under both the Sixth Amendment to the United States Constitution and article 1, section 10, of the Rhode Island Constitution is the right to show that an adverse witness is biased. *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *State v. Texter,* 594 A.2d 376, 377 (R.I.1991); *State v. Beaumier,* 480 A.2d 1367, 1372 (R.I.1984); *State v. DeBarros,* 441 A.2d 549, 552 (R.I. 1982). Hence this court held in *Texter* that it was error to bar defense counsel from cross-examining the victim of the alleged assault concerning her motive to fabricate the charges against the defendant. 594 A.2d at 378. Defense counsel in that case sought to introduce evidence that the victim had a vendetta against the defendant because he had threatened to report her husband for thievery. *Id.* Similarly in *DeBarros* this court vacated the convictions because the trial justice excluded testimony that the victim of the assault for which the defendants were con-

victed was going to sue the State of Rhode Island for injuries arising out of the assault. 441 A.2d at 551–52. In *DeBarros* we held that the error was of constitutional magnitude because defense counsel was not permitted to raise the issue of bias during cross-examination and was "cut off at the threshold of inquiry." *Id.* at 552.

In this instance defense counsel had an opportunity to cross-examine Mary on the issue of bias. The only evidence that defense counsel was precluded from presenting to the jury was defendant's testimony concerning the market value of the marital domicile. The trial justice excluded this testimony on the basis that the value and the division of defendant's marital assets were not relevant to the issue of bias in his criminal proceeding. We hold that the decision of the trial justice to exclude this testimony was proper.

 A defendant's right to explore the issue of bias does not strip the trial justice of his or her obligation to determine whether the evidence is competent and relevant for the purpose for which it is offered. *State v. Tutt*, 622 A.2d 459, 463 (R.I.1993); *State v. Edwards*, 478 A.2d 972, 975 (R.I.1984); *State v. Cianci*, 430 A.2d 756, 762–63 (R.I.1981). It is well settled that questions pertaining to the relevancy of evidence are left to the sound discretion of the trial justice. *State v. Tempest*, 651 A.2d 1198, 1215 (R.I.1995). This court will not reverse a trial justice's determination of relevancy absent a showing that the trial justice has clearly abused his or her discretion. *Id.* at 1216. In this instance the defendant was not competent to testify to the market value of the marital domicile. *See Greene v. State Board of Public Roads*, 50 R.I. 489, 492, 149 A. 596, 598 (1930); *see also* R.I. R. Evid. 702.[5] Only an expert may testify to an opinion of market value concerning real property. *Greene*, 50 R.I. at 492, 149 A. at 598. There was no attempt at trial to show that the defendant had expertise in the area of real estate valuation; consequently, his testimony on the matter was properly

excluded. We also agree with the trial justice that the relevance of this evidence was tenuous at best, likely to confuse the jurors, and of little help to them in deciding the issue of bias. *See* R.I. R. Evid. 403.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction entered in the Superior Court is affirmed. The papers in the case may be remanded to the Superior Court.

BOURCIER, J., did not participate.

---

**5.** Rule 702 of the Rhode Island Rules of Evidence provides in pertinent part:

"*Testimony by experts.*—If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to

determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."