STATE

v.

Charles AUSTIN.

No. 97–219–C.A.

Supreme Court of Rhode Island.

Dec. 20, 1999.

Aaron L. Weisman, Providence, for Plaintiff.

Francis S. Holbrook, II, Newport, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

In the early morning hours on February 5, 1994, Charles Austin, the defendant, in a fit of jealous rage struck his former girlfriend Martha Fernandez (Fernandez), some twenty times about her head and body with an empty brandy bottle. He was arrested, charged with an assault with a dangerous weapon, tried before a Superior Court jury, and convicted. On July 19, 1996, he was sentenced to a term of fifteen years, five of which were to be served, with the remaining ten years being suspended with probation. Judgment of conviction was entered and the defendant appealed.

On November 16, 1998, following a pre-briefing conference, the parties were directed to appear before this Court on a day certain to show cause why the issues raised in the defendant's appeal should not be summarily decided. On November 9,

1999, the parties came before the Court for oral argument, pursuant to the Court's earlier show cause hearing order. After hearing oral arguments and considering the parties' prebriefing statements, we are of the opinion that the parties have failed to show cause why the issues raised in this appeal should not be summarily decided, and therefore we proceed to do so at this time.

The trial facts underlying the defendant's conviction are quite clear, despite his post trial attempts to reconstruct, explain, and excuse their condemning nature. In October 1991, Fernandez and the defendant became entangled in an amorous dalliance that blossomed and bloomed until Fernandez discovered that the defendant was a married man. Her interest in the affair quickly cooled, but the defendant's attraction to Fernandez remained at a constant 212° Fahrenheit. He continued to visit her at her apartment in Pawtucket, and on one occasion in May 1993, he followed her to Santo Domingo, where she had gone to visit with family.

It was back in Pawtucket, however, where the defendant's ever-blazing interest in Fernandez boiled over and finally did him in. At about midnight on February 4, 1994, he was in the Pawtucket area when he discovered that the battery in his Mercedes automobile needed to be charged. He went to Fernandez's apartment to request permission to use an electrical outlet in order to charge the battery in his vehicle, which, in the meantime, he had parked in the driveway. She permitted him to do so. He made the necessary electrical connections and, after doing so, reentered the apartment and then proceeded to dress down to only his underwear. While so attired, he waited for his car battery to be charged. While waiting, one of Fernandez's platonic friends, Frank Medrano (Medrano), whose finances, but not battery, were in need of recharging, also happened to drop in on Fernandez, purportedly to borrow cab fare in order to get to his home in Massachusetts or, in the

alternative, to stay overnight in her apartment. At this point, apparently more than the battery in the defendant's Mercedes was undergoing an electrical charge, and the defendant began calling Medrano obscene names and threatened him with immediate violence. Medrano, perhaps mindful of the defendant's black belt in karate, quickly exited the apartment, *sans* cab fare but still in good health and with all his body parts intact.

The defendant remained in the apartment for a short time, and after composing himself, put on his clothing and went out into the cold night to unplug the electrical cord that was charging the battery in his Mercedes. Instead of driving off, however, the defendant decided to return to the apartment, where he expected that he was still welcome, in order to share a cigarette with Fernandez. His expectations of a warm welcome and a peaceful smoke were not as he believed they would be, and he became enraged. He picked up a nearby brandy bottle and began hitting Fernandez with the bottle, "like crazy, like twenty times" until she passed out.

A short time later, Fernandez's young daughter, who had been asleep in an adjoining bedroom, awakened and discovered her mother, sprawled on the living room floor, bleeding from the head. The defendant was not in the apartment. The daughter called 911. When the police arrived at about 3 a.m., Fernandez was taken to Rhode Island Hospital, where she was treated for her injuries and kept until later in the day.

The next day, a Saturday, the defendant repeatedly telephoned Fernandez, who by now had returned to her apartment but who, because of her injuries, was unable to speak with him. The following day, the defendant persisted in telephoning Fernandez. In desperation, she had her daughter telephone for police assistance. The daughter was told to tape record the telephone calls, which she did. In those recorded telephone calls, the defendant made statements that would later serve to

incriminate him at his trial. At that trial, he admitted to hitting Fernandez in an alleged battle of bottles, maintaining that he had done so only in an attempt to protect himself from Fernandez, who he said had earlier burned him with a cigarette and was threatening him with a Heineken beer bottle.

The defendant argues here on appeal that manifold errors occurred in his Superior Court trial. He asserts (1) that the trial justice erroneously excluded relevant evidence of Fernandez's occult practices, (2) that the trial justice erred by permitting to be introduced as evidence portions of the recorded telephone conversations between him and Fernandez, as well as with Fernandez's daughter, Cynthia, (3) that the trial justice erred in refusing to grant his motion to pass the case following Fernandez's testimony, (4) that the trial justice erred in giving an improper self-defense instruction to the jury, (5) that his right to a fair trial was denied him because of prejudicial pretrial remarks made by the state's prosecutor and because of the trial justice's later alleged pro-prosecution bias, and finally, (6) that because of the twenty-one month delay in bringing him to trial, he had been denied his right to a speedy trial.

We reject all of his appellate assertions, deny his appeal, and affirm the judgment of conviction.

## I

### The Occult Practices

■ On appeal, the defendant argues that he should have been allowed at trial to introduce evidence that Fernandez practiced voodoo and witchcraft and when doing so, often went into trances as a result of such practices. He asserted that in the past during these voodoo-inspired trances, Fernandez had attacked him, thus leading him to believe that she was about to attack him again during the early-morning altercation on February 5, 1994. The trial justice sustained the state's objection to

the proffered occult testimony on relevancy grounds.

■ We have consistently held that questions pertaining to the relevancy of evidence proffered at trial are subject to the sound discretion of the trial justice. *State v. Tempest*, 651 A.2d 1198, 1215 (R.I. 1995). Absent a showing that a trial justice has abused his or her discretion, this Court will defer to the trial justice's determination of relevancy. *State v. Cote*, 691 A.2d 537, 543 (R.I.1997) (citing *Tempest*, 651 A.2d at 1216.)

Our review of the record before us clearly reveals that the trial justice in this case did not abuse her discretion in excluding the defendant's proposed voodoo and witchcraft testimony. The trial record indicates that she allowed extensive testimony concerning the alleged prior assaults upon him by Fernandez to come before the jury in support of his self-defense theory, but that she chose not to overburden the jury with the speculative evidence pertaining to past occult-induced trances and assaults by Fernandez. The trial justice found that such evidence had little relevance to the issues at trial. That choice, we believe, was well within the bounds of sound discretion and was without error.

## II

### The Recorded Telephone Conversations

■ The defendant next argues that the trial justice committed reversible error by permitting introduction of redacted portions of the tape-recorded telephone conversations that he had initiated with Fernandez and her daughter Cynthia after the assault. The tapes, partly in English and partly in Spanish, included statements that the defendant had made to the effect that he would burn down Fernandez's house, and which also described various acts of violence that he said he was capable of committing. He asserts now that the redacted tapes were irrelevant, highly prejudicial in nature and served only to confuse and inflame the jury. We disagree.

On the basis of the trial facts before her, the trial justice concluded that the probative value of the redacted tapes reflected the defendant's state of mind at the time of his violent assault upon Fernandez and was not substantially outweighed by any danger of unfair prejudice resulting therefrom to the defendant. In making that determination, the trial record indicates that the trial justice took great care to identify and review those portions of the tapes that defense counsel claimed were unduly prejudicial, and in turn, proceeded to rule on each of those portions. As a result of this careful balancing of the probative value versus any undue prejudice that might have followed from introduction of the contents of those tapes, we conclude that the redacted portions that were actually admitted into evidence were relevant to the elements of the crime charged, which elements the state was required to prove beyond a reasonable doubt during the course of the trial. We cannot say that on the basis of the record before us the trial justice abused her discretion by permitting introduction of the challenged recordings.

### III

### The Motion to Pass

■ During trial, Fernandez chose to testify without the assistance of an interpreter. On one particular occasion, she employed words that, when taken in the context of the particular answer given by her, seemed out of place. On that occasion, the trial justice asked Fernandez to clarify what she had meant by her use of the word "training" while responding to a question concerning her relationship with the defendant. She responded to the trial justice's question by saying that she meant to say "threatening" instead of the word "training" that she had used in responding to the prosecutor's question. Defense counsel then moved to pass the case, noting that the prosecutor had not presented any evidence that the defendant had previously made any threats to Fernandez.

The trial justice denied defense counsel's motion to pass the case, but did give a cautionary instruction to the jury, that was acceptable to defense counsel as well as to the state's prosecutor, in which the jury was told to disregard Fernandez's testimony that had been given in response to the trial justice's question.

On appeal, the defendant claims that the trial justice's cautionary instruction was ineffective. He argues that the effect of Fernandez's "threatening" testimony, coupled with the admission of the recorded telephone conversations, served to paint him as possessing the criminal propensity to commit "murder, arson, mayhem, and other serious felonies," crimes for which he had never been accused of, and thus constituted reversible error. We do not agree.

■ It is well settled that a motion to pass a case during the progress of trial is left to the sound discretion of the trial justice and that his or her determination is given great weight and will not be disturbed on appeal unless clearly wrong. *State v. Figueroa*, 673 A.2d 1084, 1091 (R.I.1996); *Tempest*, 651 A.2d at 1207.

After reviewing the trial record, we believe that the word "threatening" used by Fernandez in responding to the trial justice's question was not so inflammatory as to thereafter hinder the trial jurors in their ability to deliberate impartially. Further, because we believe that the remark was certainly expiable, we conclude that the trial justice's cautionary instruction to the jury, which was given in both a timely and correct manner, and which specifically ordered the jurors to disregard entirely Fernandez's answer, ameliorated any potential prejudicial damage to the defendant during the jury's deliberation.

### IV

### The Self–Defense Instruction

■ The defendant next asserts that the trial justice's instruction to the jury con-

cerning his right of self-defense against Fernandez was erroneous. He contends that the trial justice's jury instruction effectively gutted his self-defense theory upon which he relied at trial. After reviewing the trial record, we are of the opinion that this issue is not properly before us, because it was not raised below.

■ "According to our well-settled 'raise or waive' rule, issues that were not preserved by a specific objection at trial, 'sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal.'" *State v. Bettencourt,* 723 A.2d 1101, 1107 (R.I.1999) (quoting *State v. Toole,* 640 A.2d 965, 972–73 (R.I.1994)). "Consequently, allegations of error committed at trial are considered waived if they were not effectively raised at trial, despite their articulation at the appellate level." *Id.* at 1107–08 (quoting *Toole,* 640 A.2d at 973).

In this case, the record reveals that defense counsel interposed only a general objection to the entire "doctrine of retreat" jury instruction, rather than a specific objection to the particular portion of the "self-defense" instruction, of which he now claims error. Defense counsel's mere general objection to the instruction was not sufficiently focused to call to the trial justice's attention the particular controverted instruction, and thus did not serve to preserve the issue of its propriety for our appellate review. Therefore, we conclude that under the "raise or waive" rule, the defendant's argument is rendered nugatory and any analysis of the merits of his argument is unwarranted.

## V

### The Prosecutor's and the Trial Justice's Remarks

■ The defendant next cites as error, an incident that took place prior to the start of his trial, outside the jury's presence, when the state's prosecutor called the trial justice's attention to certain pro-vocative comments that had been directed to him by the defendant in the hallway leading to the courtroom. The trial justice, in the absence of the jury, then questioned the defendant about the particular incident and she concluded her colloquy with him by cautioning him generally about his need to avoid any inappropriate conduct during the course of his trial so that the trial could be conducted in a fair and impartial fashion. The defendant couples that allegation of error on the part of the trial justice with a later statement by the trial justice during the trial made while the defendant was testifying about his knowledge of martial arts and Eastern philosophy. He contends that the trial justice improperly commented on his testimony by stating, "[h]ighly skilled. I am impressed."

[9] When a criminal defendant on appeal claims error because of allegedly prejudicial remarks made by a prosecutor or by the trial justice, this Court must weigh the potential prejudicial impact that any such comments might have had on the trial jury. *Figueroa,* 673 A.2d at 1090 (citing *State v. Costa,* 111 R.I. 602, 609–10, 306 A.2d 36, 40 (1973), and *State v. Peters,* 82 R.I. 292, 297, 107 A.2d 428, 430–31 (1954)). In this case setting, we note initially that the prosecutor's statements had not been made in the presence of the jury.

Elaborating on well-established principle cited in *Figueroa,* we discern nothing in the present case's trial record suggesting that the defendant's right to a fair trial was in any manner prejudiced by the out-of-court statements made by the prosecutor, by the remarks made by the trial justice in the absence of the jury cautioning the defendant about his conduct, nor by the trial justice's comment during the defendant's testimony. On the contrary, our careful review of the trial record reveals that the trial justice's conduct throughout the trial was commendably fair and impartial. The prosecutor's statement, as noted earlier, was made outside the presence of the trial jury and thus

never reached the jury. Further, the trial justice's justifiable concern that the defendant say and do nothing during his trial that might adversely prejudice him during the trial was a proper concern, and is evident from her colloquy with him. Thus, we are unable to ascertain any possible prejudice that might have resulted to the defendant and his right to a fair and impartial trial.

We find a similar lack of evidence in the trial record to support the defendant's claims that the trial justice in her comments and rulings during trial exhibited any pro-prosecution bias. "At no time did the trial justice assume the role of an advocate," as alleged by the defendant, and we discern no evidence in the record to indicate that she was anything less than totally fair and impartial to both the state and the defendant. *State v. Dionne,* 442 A.2d 876, 885 (R.I.1982). Although the trial justice did make the challenged comment "[h]ighly skilled. I am impressed," the trial record clearly reflects that at the time it was made, she was not commenting upon the defendant's testimony, but instead, was referring to the proficiency of the court reporter, whose services she had just called upon to read back the defendant's answer.[1] The record also reflects that the trial justice during her initial pretrial jury instructions repeatedly instructed the jury that rulings and remarks that she might make during the course of the trial should not be construed as evidence, nor as indicative of her feelings about the facts or testimony. We also note that at the conclusion of the trial, the trial justice in her final instruction to the jury again emphatically reemphasized her neutrality concerning the trial evidence. Based upon the foregoing analysis, we conclude that the trial justice at all times during the defendant's trial maintained the requisite

judicial impartiality, and that the defendant's claims of error are without merit.

## VI

### Right to a Speedy Trial

The defendant's last and final ground for appeal concerns his claim that he was denied his right to a speedy trial as guaranteed by our State and Federal Constitutions. He contends that the trial justice erred in finding that he had not been denied his right to a speedy trial and in denying his motion to dismiss for that reason.

"*Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), enunciates a four factor test to determine whether a defendant has been denied the right to a speedy trial." *State v. Austin,* 731 A.2d 678, 683, (R.I.1999). "The court must consider '(1) the length of the delay, (2) the reason for delay, (3) the defendant's assertion of his [or her] rights, and (4) the prejudice to the accused.'" *Id.* (quoting *State v. Allan,* 433 A.2d 222, 224 (R.I. 1981)). The denial of a right to a speedy trial impinges upon our constitutional safeguards, and thus the ultimate determination here whether Austin's constitutional rights have been infringed must be reviewed *de novo. Ornelas v. United States,* 517 U.S. 690, 696–97, 116 S.Ct. 1657, 1661–62, 134 L.Ed.2d 911, 919 (1996). "Despite this *de novo* standard regarding ultimate determinations, however, the Supreme Court has warned 'that a reviewing court should take care ' * * * to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts * * *.'" *Powers v. State,* 734 A.2d 508, 514 (R.I.1999) (quoting *Ornelas,* 517 U.S. at 699, 116 S.Ct. at 1663, 134 L.Ed.2d at 920). Therefore, though we review *de novo* the trial justice's ultimate determination that Austin's constitutional

---

1. Austin also asserted in his appeal that the court reporter omitted from the transcript laughter from the trial justice and laughter and comments from a juror during his testimony. In the absence of defense counsel's motion to amend or correct the trial record, and in the absence of a timely objection at trial, we presume the stenographer accurately transcribed the trial proceeding and we will not consider this issue on appeal.

rights had not been violated, we continue to give great deference to the historical findings and the inferences made by the trial justice. *Id.*

■ A review of the travel of this case indicates that Austin was arrested on February 5, 1994, was arraigned on August 2, 1994, and was not tried until May 14, 1996, some twenty-one months later. We find this delay to be presumptively prejudicial and consequently turn to the other prongs of the *Barker* test. *See Austin*, 731 A.2d at 683; *State v. Bleau*, 668 A.2d 642, 645 (R.I.1995); *State v. Tarvis*, 465 A.2d 164, 175 (R.I.1983).

After reviewing the record, we believe, as did the trial justice, that the prime reasons for the delay were attributable to the defendant and/or his defense counsel's failure to prepare and proceed with trial. We note that the defendant has been almost uniformly discontented with his various court-appointed counsel, and in the course of the twenty-one month pretrial period, has had five attorneys represent him at various stages of these proceedings. The defendant asserts to us in this appeal that he should not be penalized for his particular acumen in being able to evaluate the caliber of his legal representation and for his ability to point out his defense counsel's alleged systematic failure to adequately represent him. Notwithstanding his vigorous assertions, we are of the opinion that his difficulty in dealing with his defense counsel was of his own choosing and fault, and weighed heavily against him in his alleged quest for a speedy trial. *Austin*, 731 A.2d at 683; *State v. Johnson*, 688 A.2d 285, 288 (R.I.1997). Our review of the lack of speedy trial assertions by the defendant reveals that the primary reason that it took twenty-one months for the defendant to arrive at the courtroom door was because he kept stumbling over his various attorneys along the way.

We similarly conclude that the third and fourth prongs of the *Barker* test also weigh against him. The trial justice found that the defendant's assertion of his right to a speedy trial was first claimed in February 1996 and she noted "[i]t's now May of '96 and we are going to trial." Further, the trial justice considered the fact that the defendant had been released on bail and had not been incarcerated while waiting for trial. She found that the defendant suffered no perceptible prejudice from the delay. Thus, in applying the *Barker* test to the record facts before us, we cannot say that the trial justice was clearly wrong in finding that the defendant was himself responsible for most of the delay and that his right to a speedy trial had not been violated in this case.

For all the reasons stated, the defendant's appeal is denied. His judgment of conviction is affirmed and the papers in this case are remanded to the Superior Court.