STATE

v.

William TETREAULT.

No. 2009–274–C.A.

Supreme Court of Rhode Island.

Oct. 31, 2011.

Virginia M. McGinn, Department of Attorney General, for State.

Janice M. Weisfeld, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

On November 26, 2003, the defendant, William Tetreault (defendant or Tetreault), was charged with maliciously beating and sexually assaulting his girlfriend, Teresa[1] (Teresa or complainant). In November 2006, the defendant was tried before a Superior Court jury on five felony charges, and convicted by the jury on all counts.[2] The trial justice denied the defendant's motion for a new trial and sentenced him to concurrent terms of thirty years at the Adult Correctional Institutions: twenty years to serve and ten years suspended with probation for the two first-degree sexual assault counts; twenty years to

---

1. The name of the complainant has been changed to protect her privacy.

2. We note that eight years elapsed between the date of the offense and this appeal. The case took three years before being tried in Superior Court and an additional five years to be heard on appeal by this Court. Although it is colloquially said that the "wheels of justice grind slowly but exceedingly fine," we are hard-pressed in the face of this delay to conclude that justice is any the finer for it.

serve on the two felony assault counts; and one year to serve on the larceny count.

This case came before the Supreme Court on October 3, 2011, on defendant's appeal of two of the trial justice's evidentiary rulings. First, defendant avers that the trial justice erred under Rules 608(a) and 403 of the Rhode Island Rules of Evidence by disallowing opinion testimony as to complainant's character for untruthfulness. Second, defendant assigns error to the trial justice's decision under Rule 609 of the Rhode Island Rules of Evidence to allow into evidence eleven of defendant's prior convictions, which were used to impeach his credibility as a witness. Because we are satisfied that the trial justice carefully considered the proffered evidence in both instances and did not abuse his discretion, we affirm the judgment of the Superior Court.

## Facts and Travel

On Monday, August 4, 2003, two Woonsocket police officers, Detective Sergeant Luke Simard (Det. Simard) and Officer Omer Boucher, responded to Landmark Medical Center, where they encountered a badly bruised and very distraught woman whom we shall refer to as Teresa. Upon initial questioning by police, Teresa recounted how, after using an automated teller machine (ATM) on the previous Saturday afternoon, she had been dragged, assaulted, beaten, and raped by a stranger. Teresa described the attack as occurring on a blue blanket in a wooded area behind a liquor store and near World War II Memorial Park. The next day, suspicious about whether such a brutal attack as described by Teresa could occur in a busy area of the city, the officers went to Teresa's apartment in order to conduct a second interview. The defendant, who was Teresa's boyfriend at the time, also was home. Tetreault explained to the police that he was with Teresa on the afternoon of the attack, but that he had not accompanied her to the ATM, and that he had not reported the attack in deference to Teresa's wishes.

Detective Simard next obtained surveillance photographs of ATM transactions made with Teresa's card and discovered that despite his assertions to the contrary, defendant was present on Saturday when Teresa used the ATM and that he also used the ATM card by himself the following day. Armed with this new information, Det. Simard returned to Teresa's apartment and asked her to accompany him to the police station, a place he considered to be a "safe environment" for her to disclose the actual facts of the crime.

Once confronted with the photographs at the police station, Teresa relented and gave an account of her attack that she eventually would tell a jury at Tetreault's trial. Teresa stated that the assault had occurred in her apartment and was perpetrated by Tetreault. She described how on that Saturday afternoon Tetreault had beaten her, burned her with a cigarette, nearly suffocated her, and sexually assaulted her.

Teresa testified how on the day of the attack she and Tetreault walked to the bank and then to the liquor store and then finally back to their apartment. Once inside, Teresa and Tetreault engaged in a heated verbal argument after Teresa told Tetreault, who was monopolizing her cell phone, to end the conversation. Teresa recounted that Tetreault became very angry with her and forcibly grabbed her face while burning her leg with his cigarette. The defendant was laughing and smiling while he violently beat her. The defendant forcibly inserted his penis into Teresa's mouth and then engaged in vaginal intercourse. After sexually assaulting Teresa, defendant held a plastic bag over

her face until she could barely breathe. According to Teresa, when she asked him, "Why don't you just kill me?" Tetreault responded, "It wouldn't be any fun."

The next thing Teresa remembered was awakening the following morning; she was naked, bloody, and bruised. Although Tetreault was contrite, he refused to allow her to go to the hospital. He warned her that if she called the police, his friends would think of her as a "cop-caller" and potentially harm her. Teresa recalled that at some point Tetreault left the apartment, but that she was afraid to flee; she did, however, telephone her bank, and discovered that Tetreault had withdrawn money from the account without her authorization. This transaction subsequently ripened into the larceny conviction.

Eventually, after she expressed a fear that she might die, Teresa persuaded defendant to allow her to go to the hospital. Teresa explained that while in a taxi en route to the hospital, Tetreault told her that if she was questioned by the police she should lie about how she was injured. The defendant told Teresa to fabricate a story about being attacked by a stranger on a blue blanket near the park.

At trial, defendant testified and admitted to hitting Teresa, but he denied her other allegations. Tetreault testified that when Teresa took back her cell phone "it pissed me off" and "I smacked her." The defendant further described how he "grabbed her by the neck and actually picked her up and put her up to the wall." Although Tetreault acknowledged grabbing and shaking Teresa multiple times during the afternoon, along with carrying her across the room by her face, he adamantly denied sexually assaulting Teresa—stating that he "wasn't in any mood for any sex." He denied burning her with a cigarette. According to defendant, Teresa would occasionally fall asleep while smoking.

The defendant testified that on the morning after the attack, he was afraid of going to jail if he was arrested. He left the apartment and proceeded to withdraw $300 from Teresa's ATM account—money he claimed he previously had deposited into the account. Although he considered running away, defendant returned to the apartment and tried to make amends with Teresa. He testified that when Teresa called a taxi to take her to the hospital, he expressed concern about police involvement, but that Teresa was the one who volunteered to concoct a story in order to divert the police from the actual perpetrator.

After the jury returned a guilty verdict, the trial justice denied defendant's motion for a new trial. This appeal ensued.

## Issues Presented

Before this Court, defendant argues that Woonsocket Police Detective Steven Nowak (Det. Nowak)[3] should have been permitted to testify as to his opinion of complainant's character for untruthfulness. In a pretrial *voir dire* hearing, Det. Nowak testified that in 2003 and 2004, he responded to approximately eleven separate police complaints that Teresa made to the Woonsocket police.[4] Detective Nowak sometimes had direct contact with Teresa when investigating these complaints, and

3. We note that by the time of trial, Det. Nowak had been promoted to the rank of lieutenant.

4. Teresa also reported to police that she was raped in October 2004 by a different assailant, but Det. Nowak did not respond to that complaint. At trial, defendant was permitted to cross-examine Teresa about this alleged subsequent rape.

on other occasions he acted in a supervisory capacity. He described how Teresa appeared intoxicated on most of the occasions when she filed complaints and how it had "appeared she was less than truthful" on some of the occasions, particularly when she had been drinking.[5] The detective did, however, testify that a number of the complaints Teresa made were corroborated by other evidence and that some led to convictions and others were not pursued simply because Teresa could not be located.[6] Detective Nowak also testified that he was unaware of any police complaints filed by Teresa near the time of trial, in 2005 or 2006, and that in his most recent interactions with Teresa in relation to the ongoing trial, he noticed that she seemed to have "cleaned up" her life and did not appear intoxicated at any point. Detective Nowak also testified that since 2004 he had learned that Teresa had been diagnosed with a seizure disorder and speech impediment that could cause her to slur her speech.

At the conclusion of the *voir dire* hearing, the trial justice ruled that Det. Nowak's testimony was not sufficiently relevant because it concerned events in 2004, a time that was too distant from the circumstances at the time of trial in 2006. In issuing this preliminary ruling, the trial justice noted the minimal personal interaction between Det. Nowak and Teresa, and that at the time of trial, the witness considered Teresa's credibility to be reliable. The trial justice acknowledged that Rule 608(a) permits opinion testimony regarding a witness's character for untruthfulness. He then turned to Rule 403's balancing test, and he concluded that in this instance the proffered evidence was only minimally relevant and would mislead the jury—causing the danger of unfair prejudice to outweigh any probative value the evidence might have.[7] However, the trial justice did allow the jury to consider evidence that Teresa lied to the police during their initial investigation in this case, that she abused alcohol, and that she had filed other complaints with the police.

The defendant's second assignment of error rests on his contention that the trial justice erred by allowing into evidence eleven of his fifteen prior criminal convictions, which, he contends, unfairly prejudiced him.[8] The trial justice denied defen-

---

5. Detectives Simard and Shawn Kerrigan also testified at the *voir dire* hearing about several times when they or other officers responded to complaints made by Teresa and found her to be highly intoxicated and even acting "crazy," but these witnesses were not called upon to express an opinion as to her character for truthfulness.

6. Detective Nowak described how on one occasion when Teresa reported that a man had hit her, she not only presented with a bloody mouth, but that a witness corroborated the attack. He additionally identified another time when Teresa accused a man of pushing her and the man later admitted to doing so. Detective Nowak also testified that at least three, if not more, of Teresa's complaints resulted in convictions.

7. The trial justice noted at the time of his ailing that he would consider altering his de-

cision should something develop during trial that would invite the allowance of such testimony.

8. Specifically, defendant challenges the admission of: a 1987 conviction for felony larceny; 1989 convictions for misdemeanor assault and battery, domestic assault, misdemeanor assault, and violation of a protection order; 1990 convictions for disorderly conduct and trespass; a 1991 conviction for felony assault; a 1992 conviction for domestic assault; and 1998 convictions for possession of marijuana and obstructing a police officer. The defendant did not contest the admission of four of his prior convictions: a 2000 conviction for obstruction of a police officer; a 2001 conviction for misdemeanor assault; a 2002 conviction for misdemeanor domestic assault; and a 2003 conviction for misdemeanor larceny. The

dant's *in limine* motion to exclude the convictions on the grounds that they were remote in time and not probative of credibility, but he did give a limiting instruction to the jury, charging them to only consider the convictions as relevant to credibility.

## Standard of Review

■ "It is well settled that this Court will not disturb a trial justice's ruling on an evidentiary issue unless that ruling 'constitutes an abuse of the justice's discretion that prejudices the complaining party.'" *State v. Dellay*, 687 A.2d 435, 439 (R.I.1996) (quoting *State v. Johnson*, 667 A.2d 523, 530 (R.I.1995)). Furthermore, "the trial justice has broad discretion in deciding whether or not to admit evidence of prior convictions under Rule 609." *State v. Silvia*, 898 A.2d 707, 718 (R.I.2006) (citing *State v. Werner*, 831 A.2d 183, 204 (R.I.2003)). "This Court will not disturb a trial justice's finding regarding the admissibility of prior conviction evidence for impeachment purposes unless our review of the record reveals an abuse of discretion on the part of the trial justice" that prejudices the complaining party. *State v. Rodriquez*, 731 A.2d 726, 731 (R.I.1999) (quoting *State v. Morel*, 676 A.2d 1347, 1357 (R.I.1996)).

## Analysis

### I

#### Character Evidence

The defendant's first basis of appeal derives from the trial justice's application of Rule 608(a). Rule 608(a) states that:

"The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2)

evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."

This rule, however, must be read in conjunction with the balancing test set forth in Rule 403 that is applicable in all instances:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

■ Both the state and defendant cite to our well-settled holdings that the "crucial time when the character of the witness under attack has its influence on his truthtelling is the time when he [or she] testifies." *State v. Sepe*, 122 R.I. 560, 568, 410 A.2d 127, 132 (1980) (quoting *McCormick's Handbook of the Law of Evidence*, § 44 at 92 (2d ed. Cleary 1972)). The proponent of the evidence bears the burden of showing that the witness's knowledge of another's character is close to the time of trial when the witness, whose character is being attacked, testifies. *See State v. Cote*, 691 A.2d 537, 541 (R.I.1997).

■ The defendant argues that, "[t]estimony concerning a witness's reputation for truthfulness as of any time *before* trial is admissible if the trial justice determines the evidence not too remote to be significant." *Cote*, 691 A.2d at 541. However, the issue before this Court is whether the trial justice erred in disallowing Det. Nowak's *opinion testimony* about Teresa's credibility and not her reputation in the community for truth and veracity. In his ruling excluding testimony about Teresa's

defendant conceded that these four convic-

tions were relevant and not too remote.

reputation for truth and veracity, the trial justice found that Det. Nowak lacked personal knowledge about Teresa's reputation, declaring that he did not believe that Det. Nowak was "in any position to offer any testimony regarding her reputation in the community for truth and veracity."

With respect to Det. Nowak's opinion about Teresa's character for untruthfulness, the trial justice found that the witness's opinion was centered on events that occurred in 2004, the year after the incident, and not in 2006, at the time of trial. He therefore concluded that the testimony was marginally relevant—that it had little, if any, probative value, and whatever its probative value, it would be substantially outweighed by the danger of unfair prejudice.

■■ Trial justices are vested with discretion in making evidentiary rulings in the course of trial. *See State v. Manning*, 973 A.2d 524, 536 (R.I.2009); *State v. Grundy*, 582 A.2d 1166, 1172 (R.I.1990). "A trial justice has broad discretion to exclude evidence under Rule 403 of the Rhode Island Rules of Evidence 'that, if admitted, would be misleading or unduly prejudicial.'" *State v. Wright*, 817 A.2d 600, 608 (R.I.2003) (quoting *State v. Rice*, 755 A.2d 137, 152 (R.I.2000)). Indeed, this judicial discretion to exclude evidence prevents a trial from deteriorating into a series of mini-trials to determine whether a witness was untruthful on unrelated prior occasions or to test the reliability of the opinion evidence.

In the record before us, after the trial justice allowed defendant to thoroughly examine Det. Nowak in the *voir dire* hearing, he carefully proceeded to balance the testimony's probative value with any potential prejudice in accordance with Rule 403. The trial justice noted that much had changed with respect to Teresa's lifestyle and stability between 2004 and 2006, par-

ticularly the detective's current opinion that she had "cleaned up her act." Given these circumstances, the trial justice considered the testimony to be potentially prejudicial and, at best, "very marginally" relevant to assessing Teresa's credibility at the time of trial. Additionally, the trial justice permitted ample and fruitful cross-examination of Teresa about her drinking, various police complaints, and initial dishonesty with police. Given the trial justice's thoughtful review of the proposed testimony and the broad discretion afforded trial justices when conducting Rule 403's evidentiary balancing, we decline to upset the balance that the trial justice struck in excluding Det. Nowak's opinion testimony.

## II

## Prior Criminal Convictions

■ The defendant's second claim of error stems from the trial justice's decision to admit into evidence eleven of defendant's prior convictions, which defendant argues were too remote in time and unduly prejudicial. Rule 609 permits admission of prior convictions for impeachment purposes unless the court determines that the prejudicial effect of the conviction substantially outweighs its probative value. Rule 609 states in pertinent part:

"(a) *General Rule.* For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record.

"(b) *Discretion.* Evidence of a conviction under this rule is not admissible if the court determines that its prejudicial effect substantially outweighs the probative value of the conviction. If more than ten years has elapsed since the date of the conviction or of the release of the

witness from the confinement imposed for that conviction, whichever is the later date, or if the conviction is for a misdemeanor not involving dishonesty or false statement, the proponent of such evidence shall make an offer of proof out of the hearing of the jury so that the adverse party shall have a fair opportunity to contest the use of such evidence."

In making a determination under Rule 609, a trial justice must consider the remoteness of the conviction, the nature of the crime, and the defendant's disdain for the law as reflected by his or her criminal record. *State v. Remy*, 910 A.2d 793, 798 n. 2 (R.I.2006) (citing *State v. Mattatall*, 603 A.2d 1098, 1117 (R.I.1992)). We emphasize that Rhode Island's Rule 609 is substantially more expansive than its federal counterpart. *Silvia*, 898 A.2d at 718 n. 9. "In contrast to Rule 609 of the Federal Rules of Evidence, our Rule 609 provides that the prior conviction need not involve dishonesty, false statement, or a felony to be admissible." *State v. Medina*, 747 A.2d 448, 450 (R.I.2000). "The rationale behind the fact that Rhode Island Rule 609 makes *all* prior convictions * * * available for the purpose of impeaching a witness is that the jury should be able to consider whether or not a person who has previously broken the law may have such disrespect for the law as to render him or her unwilling to abide by the oath requiring truthfulness while testifying." *Remy*, 910 A.2d at 798. A defendant's disdain for the law has a bearing on his or her credibility and is a factor in weighing whether the prejudicial effect of his prior convictions substantially outweighs their probative value.

A trial justice is afforded broad discretion in deciding whether to allow into evidence a witness's prior convictions for impeachment purposes. *State v. Vargas*, 991 A.2d 1056, 1060 (R.I.2010) (citing *Silvia*, 898 A.2d at 718); *State v. Drew*, 919 A.2d 397, 406 (R.I.2007). In determining whether the trial justice has abused his or her discretion, this Court "gives extreme deference to the trial justice's determination." *Remy*, 910 A.2d at 797 (quoting *Werner*, 831 A.2d at 204).

The trial justice carefully considered Tetreault's prior convictions and, referring to language from the New Jersey Supreme Court's decision in *State v. Sands*, 76 N.J. 127, 386 A.2d 378 (1978)—as this Court did in *Mattatall*, 603 A.2d at 1118—the trial justice declared,

"A jury has the right to weigh whether one who repeatedly refuses to comply with society's rules is more likely to ignore the oath requiring veracity on the witness stand than a law abiding citizen. If a person has been convicted of a series of crimes through the years, then conviction of the earliest crime, although committed many years before, as well as intervening convictions, should be admissible." *Sands*, 386 A.2d at 387.

The trial justice explained that, given defendant's long and continuous record of criminal behavior throughout most of his adult life, the jury was entitled to consider the proffered convictions. The trial justice tempered his decision by providing the jury with a clear limiting instruction. We also note that defendant had additional convictions dating back to 1977 that the state did not seek to introduce.

In light of the defendant's voluminous criminal record and the probative value of prior convictions as bearing on his credibility as a witness, we decline to disturb the trial justice's decision to admit the defendant's prior convictions. We are of the opinion that the trial justice acted well within the bounds of his broad discretion.

## Conclusion

Because we conclude that the trial justice did not abuse his discretion in either of the contested evidentiary rulings, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.